**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| -against- | **08 CRIM 361 (PAC)** |
| **JAMES BONCZEK,** | |
| **Defendant.** | |

**DEFENDANT JAMES BONCZEK'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO SUPRESS EVIDENCE PURSUANT TO**
**FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(C)**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT............................................................................... 1

STATEMENT OF FACTS................................................................................... 1

ARGUMENT .................................................................................................... 5

I.  The Evidence Seized From Bonczek's Apartment Must Be Suppressed Because It Was Seized Without A Warrant, In Violation Of Bonczek's Fourth Amendment Rights ............................................................................. 5

II. The Inevitable Discovery Rule Exception To The Exclusionary Rule Does Not Apply In This Case .................................................................... 7

    A.  The Inevitable Discovery Doctrine Does Not Apply Here Because At the Time That The Illegal Search Occurred The Police Had Not Taken Any Steps To Obtain A Search Warrant .......................................... 8

    B. The Inevitable Discovery Doctrine Does Not Apply Because The Search Warrant Affidavit Did Not Contain Factual Evidence That Was Obtained Lawfully Which Established Probable Cause To Believe That There Was Evidence Of Child Pornography At The Target Locations.................................................................................... 9

        (1) The Search Warrant Affidavit Contained Evidence Obtained By Illegal Means .............................................................................. 9

        (2) The Information In Detective Ryan's Affidavit Was Not Sufficient To Establish Probable Cause To Search Bonczek's Apartment ............... 11

        a.  The Factual Allegations In Detective Ryan's Affidavit Failed To Establish That The Images On Bonczek's Computer Constituted A "Sexual Performance" By A Child, As That Term Is Defined By New York Penal Law § 263.00(3) ........................................... 13

        b.  The Factual Allegations In Detective Ryan's Affidavit Failed To Establish Probable Cause To Believe That Bonczek Committed The Crime Of Endangering The Welfare Of A Child ...................................... 19

        c.  Because The Government Cannot Establish By A Preponderance Of Evidence That There Was Lawful Evidence To Establish Probable Cause To Believe That A Search Of The Target Premises Would Reveal Evidence Of Criminality, The Inevitable Discovery Doctrine Does Not Apply.................................................................................... 19

III. The Search Warrant Was Overbroad And All Materials Seized That Do Not Constitute Child Pornography Or Instrumentalities Of The Crime Must Be Suppressed ...................................................................................... 20

IV. Evidence Seized From Mr. Friedman's Apartment Must Be Suppressed Pursuant To The "Fruit Of The Poisonous Tree" Doctrine To The "Fruit Of The Poisonous Tree" Doctrine .................................................................. 23

V.  Evidence Of Bonczek's Alleged Statement To The Police Must Be Suppressed.......................................................................................... 24

   A.  The Police Failed To Inform Bonczek of His Right To Remain Silent.......................................................................................... 24

   B. Bonczek's Arrest Was Illegal And His Alleged Statement Was the Fruit Of This Illegal Arrest...................................................... 24

CONCLUSION ................................................................................... 25

## PRELIMINARY STATEMENT

Defendant James Bonczek is charged with possession and receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2)(A).[1]  Mr. Bonczek submits this memorandum of law, the accompanying declaration of Susan R. Necheles, Esq., and the exhibits attached thereto, including the affidavit of Mr. Bonczek, in support of his motion to suppress (1) all evidence seized from his apartment located at 6 Stuyvesant Oval, Apartment 8H, (2) all evidence seized from the apartment of Sanford Friedman, located at 37 West 12th Street, Apartment 10F, and (3) the statement allegedly made by Mr. Bonczek to the police on October 18, 2007.

## STATEMENT OF FACTS[2]

Mr. Bonczek resides at 6 Stuyvesant Oval, Apartment 8H, in Stuyvesant Town, a private residential development in Manhattan.  On the evening of October 17, 2007, while Bonczek was not at home, a downstairs neighbor reported a leak in her bathroom ceiling.  A maintenance worker responded, bringing with him a Special Patrolman who was assigned to the apartment complex, Sergeant Gregory Vega.  Special Patrolmen are not members of the New York City Police Department ("NYPD") but "possess the powers, perform the duties, and [are] subject to the orders, rules and regulations of the [New York City Police] department in the same manner as regular members of the force." NYC Admin. Code § 14-106.

Special Patrolman Vega and the unnamed maintenance worker appear to be employees of Stuyvesant Town.  There is no statement in Detective Ryan's Affidavit that either Special

---

[1] The indictment is attached as Exhibit A to the accompanying declaration of Susan R. Necheles ("the Necheles Declaration").

[2] Except as identified, the facts set forth below are taken from the affidavits of Detective Sean Ryan and Detective Christopher Callow, submitted in support of the search warrants, attached to the Necheles Declaration as Exhibits B and C, respectively, together with the corresponding search warrants.

Patrolman Vega or the unnamed maintenance worker had any training in child abuse, sex crimes, or child pornography, knew the legal definition of child pornography, or had ever before been involved in a case involving allegations of child pornography.

Once inside the apartment, Special Patrolman Vega and the maintenance worker observed what in their opinion were "lewd images of children" displayed on Bonczek's computer. Special Patrolman Vega allegedly reported this information to the NYPD, and Detective Sean Ryan was assigned to the case. Detective Ryan was a member of the Vice Enforcement Division of the NYPD's Major Case Unit.

At approximately 9:00 a.m. on October 18, 2007, Bonczek returned to his apartment after having spent the evening at the home of his companion, Sanford Friedman. Upon his arrival, he discovered several NYPD officers in his apartment who appeared to be conducting a search of the premises, and he was arrested. *See* Affidavit of James Bonczek, Exhibit D to the Necheles Declaration. Sometime later that day, Detective Ryan applied for and obtained a search warrant from Justice William A. Wetzel of the Criminal Court of the City of New York.

Detective Ryan's affidavit in support of a search warrant purported to set forth probable cause to believe that a search of three locations[3] would locate evidence of the following crimes: (1) Possession of a Sexual Performance by a Child, New York Penal Law §263.16, and (2) Endangering the Welfare of a Child, New York Penal Law §260.10. Ryan Aff. at ¶ 6. The entirety of the factual allegations in Detective Ryan's affidavit concerning why there was probable cause to believe that there was evidence of these crimes in the three target premises was the following:

---

[3] The three locations were Bonczek's apartment in Stuyvesant Town and his two offices, one located at 121 East 27th Street, Suite 315, and one located at 26 West 9th Street, Suite 2D1.

1.     Detective Ryan stated that he was told by a maintenance worker who had been inside Dr. Bonczek's apartment to fix a leak, and Special Patrolman Vega who accompanied the maintenance worker into the apartment, that … while inside the apartment, Sergeant Vega and the maintenance worker observed lewd images of children displayed on Dr. Bonczek's computer. These children appeared to be between the ages of from 2-7 years, with genitalia exposed, posed in a sexually explicit manner.

Ryan Aff. at 1, 4.

2.     Detective Ryan stated that Dr. Bonczek maintained two offices, one at 121 East 27th Street, Suite 315 and one at 26 West 9th Street, Suite 2D1 and that Bonczek was a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist. Ryan Aff. at 1–2.

3.     Detective Ryan stated that he had been a detective with the New York City Police Department for over 12 years and has received specialized training in child abuse and sex crimes and has participated in the execution of more than 100 search warrants for evidence of crimes involving child sexual abuse and that based on his experience, "it is regular practice for defendants to transmit, view, maintain, evidence of the sort sought, in multiple computers, and locations. Digital images may be easily and electronically transferred from one media device to another. In my experience, it is common for defendants to maintain images both at their residence and place of employment." Ryan Aff. at 4, 5.

Based on these factual allegations the Criminal Court judge found that there was reasonable cause to believe that certain property would be found at the target locations, and directed that, among other things, the police seize:

- Any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings [sic] with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- Any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above images;
  …
- Any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

Exhibit B at 8.

3

The NYPD seized Bonczek's computer and computer hardware from Bonczek's apartment.[4]  The other two target premises—Bonczek's offices—were searched but no pornography was found and no property was seized.  The government alleges that the computers and related hardware seized from Bonczek's apartment contain images of child pornography.  Additionally, the police seized documents and materials that clearly do not constitute either child pornography or instrumentality of the crimes, such as condoms, address books, Bonczek's passport, books that contained cartoon drawings of sexual activity of children, and books that had no images but described sexual activity between adults and children.

Following the search of Mr. Bonczek's apartment, Detective Callow applied to Judge Wetzel for a warrant to search the home of Sanford Friedman at 37 West 12th Street, Apartment 10F.  The factual basis for this warrant was the statement by Detective Callow that "in the course of the execution of the previous warrant [on Bonczek's Stuyvesant apartment] we have recovered numerous images of child pornography, many depicting children under the ages of ten, engaged in a wide range of sexual conduct, including sexual intercourse with adults."  Necheles Decl., Ex. C at 3.  Additional computers were seized from Mr. Friedman's home pursuant to this warrant, although it is unclear whether the government alleges that these computers contained child pornography.

After Bonczek was arrested he was transported to the precinct.  According to information supplied by the District Attorney's Office to the defendant, after he was arrested and while he was in the police car, Bonczek stated to the police: "This won't stick, I can't be

---

[4] A copy of the NYPD "Property Clerk's Invoice" forms listing the property seized is attached as Exhibit E to the Necheles Declaration.

prosecuted for my sexual preferences." People's Voluntary Disclosure Form at 1–2, attached as Exhibit F to the Necheles Declaration.

On December 12, 2007, Bonczek was indicted by a grand jury in New York County on thirty counts of possessing a sexual performance by a child in violation of §263.16 of the New York Penal Law. On April 24, 2007 the New York State indictment was dismissed and Bonczek was charged in federal court with possession and receipt of child pornography.

## ARGUMENT

As set forth in Point I below, the evidence that was seized from Bonczek's apartment by the police on October 18, 2007 must be suppressed because Bonczek's premises were unlawfully searched and evidence was unlawfully seized prior to the time when the police obtained a search warrant. In Point II we explain that the doctrine of inevitable discovery does not apply here. In Point III we explain that even if the search of Bonczek's premises was done pursuant to a legally obtained warrant, the warrant was overbroad and materials seized that were not child pornography or instrumentalities of the crime must be suppressed. In Point IV we establish that evidence seized from Mr. Friedman's apartment must be suppressed pursuant to the "fruit of the poisonous tree" doctrine. Finally, in Point V we explain that evidence concerning Bonczek's alleged statement to the police that was made after he was arrested must also be suppressed because Bonczek's arrest was illegal.

I.    **THE EVIDENCE SEIZED FROM BONCZEK'S APARTMENT MUST BE SUPPRESSED BECAUSE IT WAS SEIZED WITHOUT A WARRANT, IN VIOLATION OF BONCZEK'S FOURTH AMENDMENT RIGHTS**

As set forth in Mr. Bonczek's affidavit, Exhibit D to the Necheles Declaration, Bonczek spent the night of October 17, 2007 at the home of his Mr. Friedman. When he

returned to his apartment on the morning of October 18 he encountered a man and woman sitting on his couch. They identified themselves as police officers and informed Bonczek that he was under arrest. There were additional police officers in the apartment, actively searching the premises. The police were holding a one page document which they told Bonczek was a search warrant, but they refused to show him the document.

Bonczek was then taken into custody. Sometime later that day Detective Sean Ryan applied for a warrant from Justice William Wetzel. It is clear that the application for the warrant came after Bonczek's arrest because Detective Ryan's affidavit in support of the search warrant stated that Bonczek had already been arrested. Necheles Decl., Ex. B at 4.

Based on Bonczek's sworn statement and Detective Ryan's statement in his affidavit, it is evident that the police illegally searched Bonczek's premises without a search warrant prior to his arrest and presumably seized items pursuant to that search.[5]

Warrantless searches and seizures are unreasonable within the meaning of the Fourth Amendment unless they fall within one of the few, well delineated exceptions to the warrant requirement, none of which apply here. As the Supreme Court held in *Payton v. New York,* "It is a basic principle of Fourth Amendment law that searches and seizures inside a house without a warrant are presumptively unreasonable." 445 U.S. 573, 586–87 (1980); *Loria v. Gorman*, 306 F.3d 1271, 1283–84 (2d Cir. 2002).

Here, no exception to the warrant requirement existed. Nonetheless the police failed to obtain a warrant prior to the search of Bonczek's home. Accordingly, evidence seized from Bonczek's home pursuant to this warrantless search must be suppressed.

---

[5] The NYPD property vouchers are murky with respect to when the property was seized from Mr. Bonczek's apartment. The box labeled "Arrest Evidence" is checked, and the remarks indicate that the items were seized at the "time and place of occurrence," indicating that the seizure occurred when Mr. Bonczek was arrested. On the other hand, some of the vouchers indicate that the items were seized during the execution of a search warrant. Necheles Decl., Ex. E.

## II. THE INEVITABLE DISCOVERY EXCEPTION TO THE EXCLUSIONARY RULE DOES NOT APPLY IN THIS CASE

The government may claim that notwithstanding the initial illegal search, the exclusionary rule is inapplicable here because the evidence that was illegally seized would have inevitably been discovered by lawful means. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). The inevitable discovery exception to the exclusionary rule allows evidence initially detected as the result of unlawful government conduct to be introduced in evidence nonetheless "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Id.*

The Second Circuit has held that

> For inevitable discovery to be demonstrable, it must be the case that the evidence would have been acquired lawfully through an independent source absent the government misconduct.... The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred.

*United States v. Eng,* 997 F.2d 987, 990 (2d Cir. 1993) (emphasis in original), *cert. denied*, 510 U.S. 1045 (1994).

Here, the government may claim that the evidence would have been inevitably discovered because the police would have obtained a warrant to seize the materials, and that indeed the police did obtain a search warrant. This argument fails for two reasons. First, even if we assume that the police had probable cause to search Bonczek's apartment at the time of the illegal search, that alone is not sufficient to establish that the doctrine of inevitable discovery applies here. Second, discovery of the items at issue would not have been inevitable absent the illegal search because (a) the evidence presented in the Ryan affidavit did not provide probable cause to search Bonczek's apartment, and (b) some of the evidence presented

7

in the Ryan affidavit was apparently illegally obtained from Bonczek's apartment, and without this evidence there is even less probable cause to search Bonczek's apartment.

### A. The Inevitable Discovery Doctrine Does Not Apply Here Because At the Time That The Illegal Search Occurred The Police Had Not Taken Any Steps To Obtain A Search Warrant

Even assuming that probable cause existed to search Bonczek's apartment prior to his arrest, the mere fact that the police had probable cause does not mean the inevitable discovery rule applies. Thus, the Sixth Circuit explained in *United States v. Johnson*, 22 F.3d 674, 683 (6th Cir. 1994),

> In the inevitable discovery cases, evidence unlawfully obtained is admissible if the evidence would have been inevitably discovered by lawful means. However, to hold that simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause.

When the police do not obtain a search warrant until *after* an illegal search has been conducted, the government has a heavy burden in establishing that it was inevitable that a search warrant would have been issued. *United States v. Cabassa*, 62 F.3d 470 (1995). The government's burden includes establishing that the evidence would not have been destroyed or hidden before the warrant was issued. *Id*. at 473. ("If the process of obtaining a search warrant has barely begun [when the illegal search occurred], the inevitability of discovery is lessened by the probability, under all the circumstances of the case, that the evidence in question would no longer have been at the location of the illegal search when the warrant actually issued.").

In the instant case, the search warrant was not even sought until *after* Bonczek had returned to his apartment. If the police had not conducted an illegal search, and had not illegally been in Bonczek's apartment, at the time he returned to the apartment on the morning of October 18, Bonczek would have entered the apartment and seen the notes that were left for

him by his neighbor and by Stuyvesant Town maintenance informing him that maintenance had entered the apartment to fix a leaky shower.[6]  If Bonczek had possessed child pornography, upon reading those notes he would have realized that someone had been inside his apartment and that it was likely that that person saw the illegal child pornography on his computer.[7]  It is certainly logical, as the Second Circuit has said, to presume that Bonczek would have then destroyed or hidden the damming evidence of the alleged illegal child pornography.  *Cabassa*, 62 F.3d at 473.

Accordingly, because the government did not even begin the process of obtaining a warrant until after Bonczek had returned to his apartment, the government cannot here establish inevitable discovery of the items seized, and suppression is the only remedy.

**B.  The Inevitable Discovery Doctrine Does Not Apply Because The Search Warrant Affidavit Did Not Contain Factual Evidence That Was Obtained Lawfully Which Established Probable Cause To Believe That There Was Evidence Of Child Pornography At The Target Locations**

As set forth above, the inevitable discovery rule applies only if the government can establish by a preponderance of the evidence that it would have obtained the evidence "lawfully through an independent source."  *Eng*, 997 F.2d at 990.  Here, the government cannot establish that the evidence would have been obtained lawfully through an independent source because the search warrant that the police did in fact obtain was (1) tainted with evidence that apparently was obtained by illegal means, and (2) failed to establish probable cause.

**(1)  The Search Warrant Affidavit Contained Evidence Obtained By Illegal Means**

---

[6] Necheles Decl., Ex. D at ¶¶ 9–10.

[7] Our understanding is that the maintenance worker and Special Patrolman Vega claim they saw the pornography on Bonczek's computer because the screen saver on the computer was pornography, so the pornography constantly flashed on the computer screen.  Bonczek would therefore have known that anyone who entered the apartment would have seen the pornography.  It is rational to assume that Bonczek would at that point have attempted to destroy or hide the illegal pornography.

The Search Warrant Affidavit contained two relevant facts about Bonczek:  (1) he was a child Clinical Social Worker, treating children on an ongoing basis, and (2) he had on his computer images that were "lewd" and showed naked children displaying their genitals and posed in a "sexually suggestive manner."

Both pieces of evidence about Bonczek were told to Detective Ryan by Sergeant Vega. Thus, Detective Ryan stated in his affidavit:

> … while inside the apartment, Sergeant Vega and the maintenance worker observed lewd images of children displayed on Dr. Bonczek's computer.  These children appeared to be between the ages of from 2-7 years, with genitalia exposed, posed in a sexually explicit manner.

Ryan Aff. at 1, 4.

Detective Ryan further stated:

> I am informed by Sergeant Vega that Dr. James Bonczek was the sole resident of the apartment described above, and that Dr. Bonczek is a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist.  Sergeant Vega also provided a brochure printed advertising Dr. Bonczek.  This brochure advertises Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York 100016, Target Premises 2, and 26 West 9th Street, Suite 2D1, New York, New York, 10011, Target Premises 3.  Additionally I have observed an advertisement on the official "Psychology Today" website advertising Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York 10016, Target Premises 2.

> The website describes Dr. Bonczek's specialty as that of a trained "Child and Adolescent Psychoanalytic Psychotherapist", and discusses his work with behavioral changes and children.

Ryan Aff. at 4–5.[8]

Sergeant Vega was inside Bonczek's apartment with the maintenance worker. Presumably that is where Vega obtained the brochure that he gave to Detective Ryan.

---

[8] Ryan states in his affidavit that he also obtained information about Bonczek's therapy practice online.  It appears, however, that he conducted the computer search *after* learning from Vega that Bonczek was a child therapist.

Certainly Vega's presence in the apartment is what allowed him to view the pictures on Bonczek's computer.

Vega, however, was a Special Patrolman and "possess[ed] the powers … and [was] subject to the orders, rules and regulations of the New York City Police Department in the same manner as regular members of the force."  NYC Admin. Code §14-106.  Accordingly, Vega was an agent of the government to whom the Fourth Amendment prohibitions apply. *United States v. Lima*, No. 79-502, 1980 D.C.App. Lexis 259, *13 (D.C. Cir. March 12, 1980) ("where the security guard has powers akin to that of a regular police officer and is appointed by a governmental official, even though employed by a private company, sufficient trappings of state authority have been found to trigger Fourth Amendment restrictions."); *People v. Smith*, 82 Misc.2d 204, 368 N.Y.S.2d 954 (1975) (Special Patrolmen are agents of the government to whom Fourth Amendment prohibitions apply); *People v. Diaz*, 85 Misc. 2d 41, 376 N.Y.S.2d 849 (1975) (same).  *See, e.g., Griffin v. Maryland*, 378 U.S. 130 (1962) (where a special policeman, who had been deputized as a county sheriff but was employed by a private amusement park, enforced the park's policy of excluding African Americans, and arrested African Americans for trespassing, the Special Policeman was found to be a state actor.)

As an agent of the government, Vega did not have a right to be in Bonczek's apartment without Bonczek's permission.  Bonczek's landlord could not give permission for Bonczek. *Chapman v. United States*, 365 U.S. 610, 616-17 (1961); *United States v. Elliott*, 50 F.3d 180, 186 (2d Cir. 1995).  Accordingly, Vega was illegally in Bonczek's apartment and any information obtained as a result of his illegal presence in the apartment must be stricken from Detective Ryan's affidavit submitted in support of the search warrant.

### (2) The Information In Detective Ryan's Affidavit Was Not Sufficient To Establish Probable Cause To Search Bonczek's Apartment

We address in this section the information in Detective Ryan's affidavit and show that

11

Detective Ryan's affidavit did not establish probable cause to search Bonczek's apartment, whether the information that Vega illegally obtained is considered or is excluded.

Detective Ryan's Affidavit stated that there was probable cause to establish that there was evidence at the target locations of two crimes: (1) possessing a sexual performance of a child, and (2) endangering the welfare of a child. Ryan Aff. at ¶ 6.

The crime of "possessing a sexual performance of a child" is defined as possessing "any performance which includes sexual conduct by a child less than sixteen years of age." "Sexual conduct" means "actual or simulated sexual intercourse, oral sexual conduct, anal sexual conduct, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." Penal Law § 263.00(3).

The crime of endangering the welfare of a child is defined, in relevant part, as "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old ...." Penal Law § 260.10. Showing pornography to a child or taking pornographic pictures of a child constitutes endangering the welfare of a child. *See People v. Lynch*, 291 A.D.2d 582, 738 N.Y.S.2d 116 (3d Dept. 2002) (defendant, who had numerous computer graphic images of child pornography and had shown the video images to two children under the age of 16, was guilty of possessing a sexual performance by a child and endangering the welfare of a child); *People v. Morey*, 224 A.D.2d 730, 637 N.Y.S.2d 500 (3d Dept. 1996) (defendant's conviction for endangering the welfare of a child was upheld where child testified that she was exposed to pornography and to the defendant's sexual acts).

Thus, in order to establish probable cause to believe that there was evidence of either of these crimes, the affidavit was required to establish, at a minimum, that the images that the maintenance worker and Sergeant Vega saw on Bonczek's computer were a "sexual performance" as that term is defined by New York Penal Law § 263.00(3). Additionally, to

12

establish probable cause to believe there was evidence of endangering the welfare of a child
the affidavit was required to establish that Bonczek engaged in some sort of wrongdoing with
a child.

### a. The Factual Allegations In Detective Ryan's Affidavit Failed To Establish That The Images On Bonczek's Computer Constituted A "Sexual Performance" By A Child, As That Term Is Defined By New York Penal Law § 263.00(3)

As set forth above, the crime of "possessing a sexual performance of a child" requires
proof of an image that contains "sexual conduct" by a child less than sixteen years of age and
"sexual conduct" is defined in New York law as (1) actual or simulated sexual intercourse,
oral sexual conduct, anal sexual conduct, sexual bestiality, masturbation, sado-masochistic
abuse, or (2) lewd exhibition of the genitals.  Penal Law § 263.00(3).  This is very similar to
federal law.  Under federal law child pornography is defined as "any visual depiction,
including any photograph, film, video, picture, or computer or computer-generated image or
picture … of sexually explicit conduct …."  18 U.S.C. §2256(8).  "Sexually explicit conduct"
means "actual or stimulated (1) sexual intercourse, including genital-genital, oral genital, anal-
genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii)
masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or
pubic area of any person."  18 U.S.C.§ 2256(2)(A).

Thus, under either federal or New York State law, child pornography is defined as
images which (1) show children engaged in sexual activity (actual or simulated sexual
intercourse, oral sexual conduct, anal sexual conduct, sexual bestiality, masturbation, or sado-
masochistic abuse), or (2) contain a "lewd exhibition of the genitals" or a "lascivious
exhibition of the genitals" of a child.

For the purpose of evaluating whether a search warrant contains sufficient factual
statements to establish probable cause to search for child pornography, federal cases have

distinguished between these two categories of child pornography – pornography showing

sexual activity by children versus pornography involving a lascivious exhibition of the genitals

of a child.  As to the first category – sexual activity – courts have held that where the affiant

stated that the images showed children engaged in either "sexual activity" or "sexually explicit

conduct," this is a "statement of fact" and not merely a personal opinion, and provides

probable cause to issue a warrant because "there are very few pictures of actual children

engaged in sexual acts that are not child pornography."  *United States v. Chrobak*, 289 F.3d

1043, 1045 (8th Cir. 2002) (where agent with years of experience in investigating cases

involving child pornography and the sexual exploitation of children stated in the warrant

application that she had viewed fourteen images of "graphic files depicting minors engaged in

sexually explicit conduct," the court of appeals ruled that this language tracked the language of

the federal statute and was a statement of fact, not simply an unsupported personal opinion,

because "there are very few pictures of actual children engaged in sexual acts that are not child

pornography."); *United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (warrant application

was sufficient where a computer repair technician stated he saw approximately 1,000 files in

the defendant's computer with names indicative of child pornography, had viewed three to five

files depicting minors "engaged in sexual activity," and had described at least two of these

depictions to the officer); *United States v. Smith*, 795 F.2d 841, 847 (9th Cir. 1986) (finding

probable cause to issue a warrant where the postal inspector's application stated the photos

depicted three juvenile girls engaged in "explicit sexual conduct").

On the other hand, courts have stated that determining whether a picture falls within

the second category of pornography, in that it involves allegedly "lewd" or "lascivious"

exhibition of a child's genitals, is a subjective determination.  Not all pictures of naked

children are child pornography.  In a case involving child pornography, the Supreme Court

stated, "nudity, without more, is protected expression." *New York v. Ferber*, 458 U.S. 747,

765 n.18 (1982).  Indeed, many families have in their homes naked pictures of their young

children, taking a bath, playing, lying around.  These pictures are protected by the First

Amendment unless a court determines that the pictures contain a "lewd" or "lascivious"

display of the child's genitals.  Thus, the Ninth Circuit stated:

> Child pornography is a particularly repulsive crime, but not all images of nude children
> are pornographic.  For example, 'a family snapshot of a nude child bathing presumably
> would not be criminal.'

*United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006).  Similarly, the Third Circuit has held

that "the possession of pictures of nude minors, without more, is protected speech under the

First Amendment."  *Lesoine v. County of Lackawanna*, 77 Fed. Appx. 74, 78 (3d Cir. 2003).

Because the issue of whether a picture contains a "lewd" or "lascivious exhibition of

the genitals" of a child is a subjective determination, courts have ruled that this determination

must be made by a court, not by a police officer or a federal agent or a private citizen.  Thus,

in *United States v. Jasorka*, No. CR-97-00300 (CPS), slip op. at 8 (E.D.N.Y. July 17, 1997)

("*Jasorka I*"), *rev'd on other grounds*, 153 F.3d 58 (2d Cir. 1998) ("*Jasorka II*"),[9] then-Chief

Judge Sifton of the Eastern District of New York issued an opinion suppressing evidence

seized in a child pornography case.  In rejecting the sufficiency of the conclusory allegations

in the affidavit submitted in support of the warrant, Judge Sifton stated:

> It is logical to permit a magistrate to issue a warrant based on a law enforcement
> officer's conclusory allegations that the material to be seized depicts children engaged
> in sexual intercourse, bestiality, masturbation, and sadistic or masochistic abuse.  This
> conduct is proscribed under 18 U.S.C. §2256(2)(A)-(D) and is easily identifiable by a
> law enforcement officer who submits an affidavit in support of a search warrant.  The
> law enforcement officer does not need to evaluate the content of the material.
> Whenever material depicts a child engaging in such acts, that material is outside of the
> First Amendment and subject to seizure.

---

[9] A copy of the slip opinion in *Jasorka I* is attached as Exhibit G to the Necheles Declaration.

In contrast to materials falling into the first four categories of sexual explicit conduct under 18 U.S.C. §2256(2), lascivious materials falling within the fifth category can be much harder to identify.  Visual depictions of clothed and nude children can be either protected by the First Amendment or, alternatively, proscribed as lascivious.  *See Osborne,* 495 U.S. at 112; *United States v. Knox,* 32 F.3d 733, 745 (3d Cir. 1994).  A sensitive analysis must be used to separate the visual depictions of children not falling into 18 U.S.C. §2256(2)(A) – (D) into those depictions protected by the First Amendment and those that are not.  *See Dost,* 636 F.Supp. at 832.  There is no easy answer or objective circumstance that would make a particular depiction of a clothed or nude child lascivious.  Accordingly, when a law enforcement officer states that the material to be seized is lascivious, that officer is evaluating the content of the material and deciding for himself or herself whether that material is protected by the First Amendment.

For these reasons, before issuing a search warrant based on material alleged to be a lascivious depiction of a child, a magistrate is required by precedent and common sense to view the depiction or to receive a sufficiently detailed description of the visual depiction to permit him or her to decide the issue prior to issuing the search warrant.

*Jasorka I,* at 15–17.

Other federal circuit courts have agreed that a search warrant that seeks to search for evidence of child pornography and which cites as probable cause allegedly pornographic pictures in that the pictures allegedly have a "lascivious exhibition" of a child's genitals must either attach the allegedly pornographic images or must describe the images in detail to the Court.  Thus, in *United States v. Brunette,* 256 F.3d 14 (1st Cir. 2001), the First Circuit held that an agent's affidavit describing the alleged pornography as "a pre-pubescent boy lasciviously displaying his genitals" was a "conclusory statement" and a "bare legal assertion" insufficient to support a probable cause finding.  "It was error to issue the warrant absent an independent review of the images, *or at least some assessment based on a reasonably specific description.*" *Id.* at 19.

*Brunette* was reaffirmed by the First Circuit in *United States v. Syphers,* 426 F.3d 461 (1st Cir. 2005), which held:

A court reviewing a warrant application to search for pornographic materials ordinarily is unable to perform the evaluation required by the Fourth Amendment if the application is based on allegedly pornographic images neither appended to, nor

described in, the supporting affidavit. Ideally, copies of such images will be included in all search warrant applications seeking evidence of child pornography crimes. If copies cannot feasibly be obtained, *a detailed description, including the focal point and setting of the image, and pose and attire of the subject, will generally suffice to allow a magistrate judge to make a considered judgment.*

*Id.* at 465 (emphasis added) (*quoting Brunette*, 256 F.3d at 20).

Similarly, both the Third Circuit and the Ninth Circuits have held that an affidavit in support of an application for a search warrant for child pornography must contain specific facts. In a case involving the alleged violation of Pennsylvania's child pornography law, the Third Circuit explained that an affidavit that fails to describe the pictures at issue "simply [does] not provide a sufficient basis upon which a neutral magistrate could assess whether a warrant should be issued." *Lesoine*, 77 Fed. Appx. at 78 (*citing Osborne v. Ohio*, 496 U.S. 103, 112 (1990); *New York v. Ferber*, 458 U.S. 747, 765 n. 18 (1982)). *See also U.S. v. Villard*, 885 F.2d 117 (3d Cir. 1989) (government informant's non-specific testimony describing photographs was insufficient to establish that photographs were lascivious exhibition of genitals violating child pornography statute). And the Ninth Circuit ruled that if a magistrate does not actually review the photographs in a child pornography case, the pictures must be "sufficiently described" in the affidavit for the magistrate to determine probable cause." *U.S. v. Pena*, No. 07-30007, 2008 WL 313184, at *2 (9th Cir. Feb. 5, 2008) (*citing United States v. Smith*, 795 F.2d 841, 847–49 (9th Cir.1986)).

In the instant case, Detective Ryan's affidavit submitted in support of a search warrant failed to describe any of the images that the maintenance worker and/or Sergeant Vega saw. There is no statement, for example, in the affidavit along the lines of "the maintenance worker and Special Patrolman Vega informed me that they viewed a picture of a little boy engaged in oral sex with another little boy." Nor is there any statement such as, "The maintenance worker

and Special Patrolman Vega saw an image of a little girl with no clothing on, her legs were spread wide apart and the picture was focused on her vagina."

Instead, the sole description of the images was the statements of Special Patrolman Vega and the maintenance worker that (1) the images of children that they observed were "lewd", (2) the children had their genitals exposed, and (3) the children were "posed in a sexually explicit manner."  Ryan Aff. at 4.

Of these three "facts," two are actually not "facts" but instead are subjective opinions. Whether or not an image of a naked child is "lewd" or the child is posed in a "sexually explicit manner" are opinions.  People have different world views and different tolerances for nudity. To use an example, some people may think that a home photograph taken by a mother of her four year old naked daughter sitting on a chair is "lewd" and that the child is posed in a "sexually explicit manner" because her genitals are visible.  Many parents, however, would consider this nothing more than a personal photo of their daughter that reminds them of an innocent time in her life when she was completely comfortable with her body and liked to be naked.

It is for this very reason that *the Court* must decide—not some unknown maintenance worker or Special Patrolman with no special training—based either on viewing the actual images or reviewing a description of the images, whether a nude picture of a child violates the law in that it contains a "lewd" or "lascivious" exhibition of the child's genitals.  Here, however, there was no description in Detective Ryan's affidavit of the allegedly pornographic images that the maintenance worker and Special Patrolman Vega had seen on Bonczek's computer.  Lacking any description of the images, the Court was forced to rely entirely on the opinions of the maintenance worker and Special Patrolman Vega that the pictures they had seen were "lewd."

Moreover, if the information illegally obtained by Special Patrolman Vega was stricken from the search warrant affidavit, the only information about Bonczek that the court would have was that an unnamed maintenance worker stated that in his opinion the images of children on Bonczek's computer were "lewd" and that the children were posed in a "sexually explicit manner." The maintenance worker's statement alone clearly would not be sufficient to establish probable cause to search Bonczek's apartment.

> **b.  The Factual Allegations In Detective Ryan's Affidavit Failed To Establish Probable Cause To Believe That Bonczek Committed The Crime Of Endangering The Welfare Of A Child**

Detective Ryan's affidavit also stated that there was probable cause to believe that Bonczek committed the crime of endangering the welfare of a child. The affidavit fails to provide facts that support this claim, because there are no factual allegations in the affidavit that establish probable cause to believe that (1) Bonczek showed pornography to any child, (2) Bonczek took pornographic photographs of any child, or (3) Bonczek did anything else to harm or endanger a child.

> **c.  Because The Government Cannot Establish By A Preponderance Of Evidence That There Was Lawful Evidence To Establish Probable Cause To Believe That A Search Of The Target Premises Would Reveal Evidence Of Criminality, The Inevitable Discovery Doctrine Does Not Apply**

Thus, the affidavit of Detective Ryan submitted in support of a search warrant failed to establish probable cause to believe that there was evidence in the target premises of criminal behavior involving child pornography. Indeed, Detective Ryan's search warrant was so lacking in factual allegations that this warrant could apply to the home of any parent who has on their computer pictures of their naked children. A maintenance worker could see these pictures, decide they were "lewd" and "sexually explicit," call the police, and the result would be an affidavit identical to that submitted by Detective Ryan in the instant case, permitting the

search of that parent's entire home simply because he or she had some naked picture of his or her children.  Indeed, reading Detective Ryan's affidavit here it is impossible to rule out the very strong possibility that Bonczek merely had naked pictures of his own young children on his computer, and that the maintenance worker and Special Patrolman Vega found these pictures offensive.  As a matter of law, this is not sufficient to establish probable cause to believe that there was evidence of child pornography at Bonczek's location.  Accordingly, the government cannot meet its burden of establishing inevitable discovery of the evidence wrongfully discovered and seized in the illegal search of Bonczek's apartment and the seized evidence must be suppressed.  *See, United States v. Mejia*, 69 F.3d 309, 319 (9th Cir. 1995) (inevitable discovery doctrine did not apply when the police took no steps to secure a warrant and it was "unclear whether there was competent evidence that would have supported an application for a warrant"); *United States v. Allen*, 159 F.3d 834, 842–43 (declining to apply the inevitable discovery exception because the police did not have probable cause at the time of the illegal search and no evidence indicated that the officers ever contemplated obtaining a search warrant).

### III.    THE SEARCH WARRANT WAS OVERBROAD AND ALL MATERIALS SEIZED THAT DO NOT CONSTITUTE CHILD PORNOGRAPHY OR INSTRUMENTALITIES OF THE CRIME MUST BE SUPPRESSED

A search warrant must not request "seizure of lawfully possessed material of no evidentiary value." *Lesoine*, 77 Fed. Appx. at 79.  Only fruits, instrumentalities, and evidence of a crime are subject to seizure under the Fourth Amendment.  *Id.* (*citing Zurcher v. Stanford Daily,* 436 U.S. 547, 554 (1978)).

Detective Ryan's affidavit alleged that there was probable cause to believe that inside Bonczek's apartment there was property constituting evidence that Bonczek committed the

crimes of possession of a sexual performance by a child, endangering the welfare of a child, and "related crimes." Ryan Aff. at 3. The search warrant, however, authorized seizure of many broad categories of items that are entirely unrelated to these alleged crimes, including (a) "communications … making reference to contact or relationships with minor children, including *but not limited to*, children engaged in sexual activity, use of a child in a sexual performance, and related crimes…;" (b) "tangible, or electronic, or digital media dealing with images of children . . . engaged in sexual acts *or dealing with sexual subject matter* . . . ;" and (c) "any tangible evidence related to the sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia." *Id.* at 8–9.

Items (a) and (b) are overbroad in that they describe perfectly legal items, such as Bonczek's address book, non-pornographic photographs of children, books which discuss sexual matters, comic books picturing sexual matters. None of these items are criminal or evidence of a crime, and Bonczek has a First Amendment right to possess at least some of these items. Accordingly, evidence concerning all items seized pursuant to these overbroad provisions of the warrant must be suppressed, including the following items which are listed on the property vouchers of items seized from Bonczek's apartment: NY State ID Card of an individual named Cortez; Address/Planner books; 2004 Calendar; Misc Paperwork; Misc pictures; Books; Olympus Digital Voice Recorder; RCA Video Camera; VHS Tapes; VHS 8mm Tapes; Power Supply; Receipts; Handwritten Note; Apartment Visit Slip; [illegible] Response Sheet; and CD's.[10]

Item (c) is overbroad both because Detective Ryan's affidavit failed to establish that there was probable cause to believe that Bonczek was involved in sexual exploitation of children, and because condoms, prophylactics, sexual paraphernalia are items that are used by

---

[10] Necheles Decl., Ex. E.

many people.  There is no showing in Detective Ryan's affidavit that these items were connected to ay sexual abuse of children.  Accordingly, the condoms seized from Bonczek's apartment must be suppressed.

Accordingly, even if the evidence is not suppressed on other grounds, the evidence listed above must be suppressed because it was seized pursuant to an overbroad warrant. *See Lesoine*, 74 Fed. Appx. at 79 (where warrant "placed no restrictions on the type of . . . records that could be seized, regardless of their connection, if any, to a violation of [the alleged crime]," the warrant violated the defendant's constitutional rights); *United States v. Clements*, 972 F.2d 1344 (9th Cir. 1992) (warrant to search entire premises of defendant was overbroad when there was no probable cause to believe that the defendant had any child pornography other than that contained in a specific video, and therefore all evidence other than the video must be suppressed); *United States v. Ogden*, No. 06-20033, 2008 WL 2247074, *10 (W.D. Tenn. May 28, 2008) (evidence concerning defendant's ownership of safety deposit boxes and images of adults engaged in sexually explicit conduct must be suppressed because search warrant did not provide probable cause to believe that these materials were criminal or were instrumentalities of criminality);  *Arkansas Chronicle v. Easley*, 321 F.Supp.2d 776, 793 (E.D. Va. 2004) (where items seized pursuant to search warrant were "not alleged to be instrumentalities of any crime," the warrant was overbroad in violation of the Fourth Amendment); *United States v. Brown*, No. 00-CR-112-C, 2001 WL 34373161, *10 (W.D. Wis. Mar. 16, 2001) (if warrant had authorized seizure of all "child erotica or information pertaining to an interest in child pornography or child erotica," and had not limited that seizure to items related to child pornography, or if the government had seized items that were not actually child pornography, that evidence would have had to be suppressed).

**IV.    EVIDENCE SEIZED FROM MR. FRIEDMAN'S APARTMENT MUST BE SUPPRESSED PURSUANT TO THE "FRUIT OF THE POISONOUS TREE" DOCTRINE**

Detective Callow's affidavit states that in the course of the execution of the warrant to search Bonczek's apartment, the police found child pornography as well as evidence that Bonczek receives mail at Mr. Friedman's address.  On this basis, Judge Wetzel issued a warrant to search Mr. Friedman's apartment.  As established above, the search of Bonczek's apartment was illegal.  The Fourth Amendment exclusionary rule extends not only to the evidence seized pursuant to an illegal search, but also to secondary evidence that is the "fruit of the poisonous tree."

"Evidence obtained from an unlawful search or seizure is generally subject to exclusion as 'fruit of the poisonous tree.'" *Mosby v. Senkowski*, 470 F.3d 515, 520 (2d Cir. 2006) (*citing Wong Sun v. United States*, 371 U.S. 471, 484–85, 488 (1963); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir.1999)).

None of the qualifications to the "fruit of the poisonous tree" doctrine—the independent source doctrine, the inevitable discovery rule, and the attenuated connection principle—is applicable in this case.  The evidence seized from Mr. Friedman's apartment is directly causally linked to the illegal search of Bonczek's apartment.  It is not the case that the evidence seized from Mr. Friedman's apartment "ultimately or inevitably would have been discovered by lawful means." *Nix*, 467 U.S. 431 (1984).  And the seizure at Mr. Friedman's apartment derived immediately from the illegal search of Bonczek's apartment.  *See Wong Sun v. United States*, 371 U.S. 471 (1963).  Thus, the evidence seized from Mr. Friedman's apartment must be suppressed.

**V.    EVIDENCE OF BONCZEK'S ALLEGED STATEMENT TO THE POLICE MUST BE SUPPRESSED**

The police officers who arrested Bonczek allege that after he was arrested he stated: "This won't stick, I can't be prosecuted for my sexual preferences." Necheles Decl., Ex. F.

This statement must be suppressed for two reasons. First, the police had failed to inform Bonczek of his right to remain silent. Second, Bonczek's arrest was illegal and Bonczek's alleged statement was the fruit of this illegal arrest.

**A. The Police Failed To Inform Bonczek of His Right To Remain Silent**

According to Bonczek's sworn statement, at no time during his arrest or transport to the police station was he advised of his right to remain silent and his right to legal counsel, or asked for an explicit waiver of those rights. Necheles Decl., Ex. D at ¶¶ 13–14. His statement to the police while in the police car must therefore be suppressed. *Miranda v. Arizona*, 384 U.S. 436 (1966); *accord Dickerson v. United States*, 530 U.S. 428, 443–44 (2000) (*reaffirming Miranda*); *Berkemer v. McCarty*, 468 U.S. 420, 434–435 (1984) ("There can be no question that respondent was 'in custody' at least as of the moment he was formally placed under arrest and instructed to get into the police car."); *United States v. Snipe*, No. 06 Cr. 1102 (LBS), 2007 WL 1704182, *3 (S.D.N.Y. June 11, 2007) (where defendant's post-arrest statements in the police car were the product of custodial interrogation and arresting officers did not advise defendant of his rights under *Miranda* before questioning him, the statements were obtained in violation of *Miranda* and accordingly suppressed).

**B. Bonczek's Arrest Was Illegal And His Alleged Statement Was the Fruit Of This Illegal Arrest.**

Even if Bonczek had been informed of his *Miranda* rights and voluntarily waived those rights, his confession would be inadmissible as a fruit of a Fourth Amendment poisonous tree, viz. the unlawful arrest. The police did not have a warrant to arrest Bonczek. The only

evidence that they had that he had committed a crime were (1) the conclusory statements by a maintenance man and a Special Patrolman that they had seen on Bonczek's computer "lewd images of children" and the children "appeared to be between the ages of from 2-7 years old, with their genitals exposed, posed in a sexually explicit manner," and (2) whatever information they had obtained illegally as a result of the illegal search that the police conducted of Bonczek's apartment before they obtained a search warrant.

As set forth above, the conclusory statements of the maintenance man and the Special Patrolman were insufficient to establish probable cause to arrest Bonczek. And evidence obtained by means of an illegal search cannot, of course, establish probable cause to arrest Bonczek.

Accordingly, Bonczek's warrantless arrest was illegal. There is no question that his alleged statement to the police was the fruit of this arrest – it was allegedly made in the police car after he had been arrested. *See* People's Voluntary Disclosure Form, Necheles Decl., Ex. F at 1–2. Evidence concerning Mr. Bonczek's alleged statement must be therefore be suppressed.

**CONCLUSION**

WHEREFORE, Defendant James Bonczek moves this Court to suppress (1) all evidence seized from his Stuyvesant Town apartment, (2) all evidence seized from the apartment of Sanford Friedman, and (3) the statement allegedly made by Mr. Bonczek to the NYPD.

25

Dated: New York, New York
       July 1, 2008

HAFETZ & NECHELES

s/
—————————————————————
Susan R. Necheles, Esq.
Joshua R. Geller, Esq.
500 Fifth Avenue, 29th Floor
New York, New York 10110
212-997-7595
srn@hafetzlaw.com
jrg@hafetzlaw.com

*Attorneys for Defendant James Bonczek*

26