# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA,**

        **-against-**                    **08 CRIM 361 (PAC)**

**JAMES BONCZEK,**

                        **Defendant.**

---

### DECLARATION OF SUSAN R. NECHELES, ESQ. IN SUPPORT OF DEFENDANT JAMES BONCZEK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPRESS EVIDENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(C)

STATE OF NEW YORK        )
                           :     SS.:
COUNTY OF NEW YORK    )

SUSAN R. NECHELES hereby declares under penalty of perjury:

1.      I am an attorney duly admitted to practice in this Court.  I am a partner in the law firm of Hafetz & Necheles, counsel to the defendant James Bonczek in the above-captioned action.  I submit this declaration and the attached exhibits in support of Mr. Bonczek's motion to suppress evidence pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure.

2.      A copy of the indictment in the above-captioned action is attached hereto as Exhibit A.

3.      A copy of the affidavit of Detective Sean Ryan and the corresponding search warrant is attached hereto as Exhibit B.

4.      A copy of the affidavit of Detective Christopher Callow and the corresponding search warrant is attached hereto as Exhibit C.

5.      A copy of the affidavit of James Bonczek is attached hereto as Exhibit D.

6.      A copy of the NYPD "Property Clerk's Invoice" forms listing the property seized from Mr. Bonczek's apartment is attached hereto as Exhibit E.

7.      A copy of the People's Voluntary Disclosure Form is attached hereto as Exhibit F.

8.      A copy of the slip opinion in *United States v. Jasorka*, No. CR-97-00300 (CPS) (E.D.N.Y. July 17, 1997), is attached hereto as exhibit G.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2008.

_____
s/
Susan R. Necheles

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

    - v. -                        :

JAMES BONCZEK,                  :

            Defendant.          :

- - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # INDICTMENT
DATE FILED: APR 22 2008
08 Cr.

## 08 CRIM 361

<u>COUNT ONE</u>

The Grand Jury charges:

1.   In or about October 2007, in the Southern District
of New York and elsewhere, JAMES BONCZEK, the defendant,
unlawfully, willfully, and knowingly did possess a book,
magazine, periodical, film, videotape, computer disk, and other
material that contains an image of child pornography that had
been mailed, shipped, and transported in interstate and foreign
commerce by any means, including by computer, and that was
produced using materials that have been mailed, shipped, and
transported in interstate and foreign commerce by any means,
including by computer, to wit, BONCZEK possessed images and
videos depicting child pornography.

(Title 18, United States Code, Section 2252A(a)(5)(B).)

<u>COUNT TWO</u>

The Grand Jury further charges:

2.   In or about October 2007, in the Southern District
of New York and elsewhere, JAMES BONCZEK, the defendant,

unlawfully, willfully, and knowingly did receive child pornography that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer, to wit, BONCZEK received images and videos depicting child pornography.

(Title 18, United States Code, Section 2252A(a)(2)(A).)


_____                    Michael J. Garcia
FOREPERSON                                     _____
                                               MICHAEL J. GARCIA
                                               United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JAMES BONCZEK

Defendant.

## INDICTMENT

08 Cr.

(18 U.S.C. §§ 2252A(a)(5)(B),
2252A(a)(2)(A).)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____ Foreperson.

_4/22/08 - Fld. Indictment, Case assigned
to Judge Crotty for all purposes._

_Eaton, Jr. U.S.M.J._

Post-It
11/1/8

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

The below locations:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
(Target Premises 1)

2. 121 East 27th St., Suite 315, New York, New York, 10016;
(Target Premises 2)

3. 26 West 9th St., Suite 2D1, New York, New York, 10011.
(Target Premises 3)

AFFIDAVIT IN SUPPORT OF
SEARCH WARRANT

Detective Sean Ryan, Shield #7910, of the Vice Enforcement Division, Major Case Unit, of
the New York City Police Department, being duly sworn, deposes and says:

1.     I am a Detective Sean Ryan, Shield #7910, of the Vice Enforcement Division,
Major Case Unit, of the New York City Police Department, and as such I am a public servant of the
kind specified in CPL 690.05(1).

Brief Summary

On or about the evening of October 17, 2007, a maintenance worker responded to a complaint that
water was leaking from the apartment of Dr. James Bonczek, at 6 Stuyvesant Oval, Apartment 8H,
New York, New York, 10009. While inside the apartment, the maintenance worker observed lewd
images of children displayed on Dr. Bonczek's computer. These children appeared to be between
the ages of from 2-7 years old,  with genitalia exposed, posed in a sexually explicit manner.  The
maintenance worker contacted New York City Police Department, and I, Detective Sean Ryan was
assigned this case. At approximately 9:00 AM, October 18, 2007, Dr. Bonczek was arrested as he
returned to the above apartment. He has not yet been arraigned.

Dr. James Bonczek is the sole resident of the apartment described above, and maintains two offices
in New York County, one at 121 East 27th St., Suite 315, and one at 26 West 9th St., Suite 2D1. He

is a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist.

This affidavit is submitted in support of an application for a warrant to search:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009; hereinafter Target Premises 1.

2. 121 East 27th St., Suite 315, New York, New York, 10016; hereinafter Target Premises 2.

3. 26 West 9th Street, Suite 2D1, New York, New York, 10011; hereinafter Target Premises 3.

where there is reasonable cause to believe that the following property may be found:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers, computer diskettes,

2

compact disks, digital video disks, media cards, USB media storage devices, cellular, with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- Evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- Any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

3.    Additionally, this warrant is to hereby request the authority to retrieve the above described data, information, images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

4.    It is also requested for evidentiary purposes that this Court grant authorization for law enforcement personnel to videotape the interior of the target locations; and to analyze, test, and any way scientifically process the target locations and all the items seized.

5.    With respect to the stored electronic communications, data, information, and images contained in computer disks, cd roms, media cards, USB devices, digital video disks, media cards, cellular telephones, and hard drives described above, including but not limited to any computers, cell phones, or electronic devices at the target locations, it is also requested that this Court grant permission to retrieve the above described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into another device.

6.    As set forth below, there is reasonable cause to believe that inside the target locations there is property which  (i) has been used or is possessed for the purpose of being used, to commit or conceal the commission of an offense and (ii) constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of said offense, to wit, Possession of a Sexual Performance by a Child, Penal Law Section 263.16, Endangering the Welfare of a Child, Penal Law Section 260.10; and related crimes.

7.    My basis for believing that the property listed above is in the above target locations is as follows:

- I am informed of the following by Sergeant Gregory Vega, a Special Patrolman assigned to the apartment complex at 6 Stuyvesant Oval, New York, New York, 10009: On or about the evening of October 17, 2007, a maintenance worker, in the company of Sergeant Vega, responded to a complaint that water was leaking from the apartment of Dr. James Bonczek, at 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009, Target Premises 1. While inside Target Premises 1, Sergeant Vega, and the maintenance worker, observed lewd images of children displayed on Dr. Bonczek's computer. These children appeared to be between the ages of from 2-7 years old, with genitalia exposed, posed in a sexually explicit manner. Sergeant Vega then reported the above to the New York City Police Department, and I, Detective Sean Ryan was assigned this case.

- Furthermore, at approximately 9:00 AM, October 18, 2007, Dr. Bonczek was arrested as he returned to the above apartment. He has not yet been arraigned. The location has been guarded by New York City Police Detectives since the initial report.

- I have been a detective with the New York City Police Department for over twelve years. I am currently assigned to the Vice Enforcement Division, Major Case Unit of the New York City Police Department. I received specialized training in child abuse and sex crimes, and the NYPD Criminal Investigation course. During my tenure as a detective, I have been involved in the investigation of persons engaged in the dissemination of indecent material to a minor, as well as in the possession and trafficking of child pornography. I have participated in the execution of more then 100 search warrants for evidence of these crimes, including search warrants for the seizure and examination of computers and computer-related materials. Based on this training and experience I am familiar with many of the methods by which persons involved in the dissemination of indecent materials to minors and the possession and distribution of child pornography obtain, store, transmit, and traffic in such material.

- Prior search warrant executions that I have participated in have revealed that evidence in computer related crimes is commonly found not only on the hard drive of the seized computers but also on other types of magnetic media including floppy disks, computer tapes, zip-disks, jazz disks, and cd roms. Many of these incriminating files were deleted by the perpetrators only to be retrieved from the seized computer by trained technicians using advanced technology. Moreover, during long term-investigations, I have recovered computers containing incriminating files many months after the files were created, saved or even deleted.

- I am informed by Sergeant Vega that Dr. James Bonczek was the sole resident of the apartment described above, and that Dr. Bonczek is a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist. Sergeant Vega also provided a brochure printed advertising Dr. Bonczek. This brochure advertises Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York, 10016,

4

Target Premises 2, and 26 West 9th Street, Suite 2D1, New York, New York, 10011, Target Premises 3. Additionally I have observed an advertisement on the official "Psychology Today" website advertising Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York 10016, Target Premises 2.

- This website describes Dr. Bonczek's specialty as that of a trained "Child and Adolescent Psychoanalytic Psychotherapist", and discusses his work with behavioral changes and children.

- Based on my experience and training in the Vice Enforcement Division, and specifically the execution of over 100 search warrants for charges of this nature, it is regular practice for defendants to transmit, view, maintain, evidence of the sort sought, in multiple computers, and locations. Digital images may be easily and electronically transferred from one media device to another. In my experience, it is common for defendants to maintain images both at their residence and place of employment.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure of:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers in addition to the target computer, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular telephones in addition to the target cell phone with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target locations or other real property, mail addressed to or from the target locations, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

(ii) directing that if such evidence is found, it be brought before the Court.

With respect to the stored electronic communications, data, information and images contained in computer disks, CD ROMs and hard drives, described above, it is also requested that this Court grant permission to retrieve the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

No previous application has been made in this matter to any other Judge, Justice, or Magistrate.

_____
Detective
Sean Ryan

_____
Lawrence Newman
APPROVED: Assistant District Attorney

Sworn to before me this
October 18, 2007

_____
Judge

HON. WILLIAM A. WETZEL

PT. 34   OCT 1 8 2007

Name of Court Reporter

7

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER IN THE CITY OF NEW YORK

Proof by affidavit having been made this day before me by Detective Sean Ryan,
Shield #7910, of the Vice Enforcement Division, Major Case Unit of the New York
City Police Department  (i) that there is reasonable cause to believe that certain
property, to wit:

- any and  all images of children or minors under the age of sixteen engaged in
  sexual acts or dealings with sexual subject matter, or posed in lewd or sexually
  suggestive positions, whether depicted alone, with other children, with adults,
  or animals;

- any and all entries, stored information, or communications to or from others
  making reference to contact or relationships with minor children, including, but
  not limited to, children engaged in sexual activity, use of a child in a sexual
  performance, and related crimes, including but not limited to, the trading of the
  above described images;

- the log file of all activity relating to the accounts of James Bonczek, including
  all electronic mail and attachments or graphics, read and unread, profiles, buddy
  lists, newsgroups, "cookies" (shared computer files that indicate that the subject
  computer was used to access a Website), Websites, e-mail addresses, screen
  names, or documents related to or requesting pornographic images,
  performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames,
  addresses, numbers including telephone numbers, notes, correspondence,
  instructions and orders, stored electronic communications, item descriptions,
  and event descriptions, showing or tending to show the commission of, or
  connecting or tending to connect a person to the crimes of possessing a sexual
  performance of a child and related crimes, together with evidence showing or
  tending to show the identity of the maker or user of the data and information
  such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or
  minors under the age of sixteen engaged in sexual acts or dealing with sexual
  subject matter, digital or photographic or video cameras (including those of a
  cellular nature) capable of capturing and preserving images of children or
  minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip
  drives, magazines, any personal data assistants, computers in addition to the
  target computer, computer diskettes, compact disks, digital video disks, media
  cards, USB media storage devices, cellular telephones with photographic and

video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target locations, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

may be found in the target locations at:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009; Target Premises 1.
2. 121 East 27th St., Suite 315, New York, New York, 10016; Target Premises 2.
3. 26 West 9th Street, Suite 2D1, New York, New York, 10011; Target Premises 3.

   YOU ARE THEREFORE COMMANDED, to enter and to search the Target Locations at:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
2. 121 East 27th St., Suite 315, New York, New York, 10016;
3. 26 West 9th Street, Suite 2D1, New York, New York, 10011

for the above described property, and if you find such property or any part thereof to bring it before

the Court without unnecessary delay.

   Furthermore, this Court authorizes law enforcement personnel to videotape and

photograph the interior of the target locations; and to analyze, test, and in any way scientifically

process the target premises and all the items seized.

   Additionally, with respect to the stored electronic communications, data, information and

images contained in computer disks, CD ROMs and hard drives, described above, this Court

9

authorizes the retrieval of the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

This warrant must be executed within 10 days of the date of issuance.

_____
Judge of the Criminal Court

Dated: New York, New York

10/17/07

HON. WILLIAM A. WETZEL

PT. 34   OCT 1 8 2007

10

# CRIMINAL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
(Target Premises 1)

2. 121 East 27th St., Suite 315, New York, New York, 10016;
(Target Premises 2)

3. 26 West 9th St, Suite 2D1, New York, New York, 10011.
(Target Premises 3)

## AFFIDAVIT AND WARRANT

**Robert M. Morgenthau**
**District Attorney**
**New York County**
**One Hogan Place**
**New York, New York 10013**
**(212) 335-9000**

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

The below locations:

1. 37 West 12th St, Apartment 10F, New York, New York, 10011;

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT

Detective Christopher Callow, Shield #1310, of the Vice Enforcement Division, Major Case Unit, of the New York City Police Department, being duly sworn, deposes and says:

1.      I am a Detective Christopher Callow, Shield #1310, of the Vice Enforcement Division, Major Case Unit, of the New York City Police Department, and as such I am a public servant of the kind specified in CPL 690.05(1).

2.      This affidavit is submitted in support of an application for a warrant to search 37 West 12th St., Apartment 10F, New York, New York, 10011, hereinafter referred to as the Target Premises;

Where there is reasonable cause to believe that the following property may be found:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject

1

computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular, with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target premises, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target premises.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

3.    Additionally, this warrant is to hereby request the authority to retrieve the above described data, information, images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

2

4.      It is also requested for evidentiary purposes that this Court grant authorization for law enforcement personnel to videotape the interior of the target premises; and to analyze, test, and any way scientifically process the target premises and all the items seized.

5.      With respect to the stored electronic communications, data, information, and images contained in computer disks, cd roms, media cards, USB devices, digital video disks, media cards, cellular telephones, and hard drives described above, including but not limited to any computers, cell phones, or electronic devices at the target premises, it is also requested that this Court grant permission to retrieve the above described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into another device.

6.      As set forth below, there is reasonable cause to believe that inside the target premises there is property which (i) has been used or is possessed for the purpose of being used, to commit or conceal the commission of an offense and (ii) constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of said offense, to wit, Possession of a Sexual Performance by a Child, Penal Law Section 263.16, Endangering the Welfare of a Child, Penal Law Section 260.10; and related crimes.

7.      My basis for believing that the property listed above is in the above target premises is as follows:

- On October 18, 2007, my partner, Detective Sean Ryan, Shield No. 7910 of the Vice Enforcement Division, Major Case Unit, of the New York City Police Department, obtained a search warrant, authorized by the Honorable Justice Wetzel, issued in New York County Supreme Court Part 34. Said warrant authorized a search at 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009; said warrant is attached as Exhibit One.

- In the course of the execution of the previous warrant, we have recovered numerous images of child pornography, many depicting children under the ages of ten, engaged in a wide range of sexual conduct, including sexual intercourse with adults.

- In the course of the execution of this warrant at 6 Stuyvesant Oval, Apartment 8H, New York, New York, I recovered several pieces of mail addressed to the defendant James Bonczek, with the address of 37 West 12th St., Apartment 10F, New York, New York, 10011, the target premises. Said mail was postmarked within the last week, and bore no evidence of being forwarded by the post office.

- In addition to having recovered mail at 6 Stuyvesant Oval, Apartment 8H, New York, New York, addressed to the defendant at the target premises, I recovered a current New York driver's license from the premises, with defendant's name, photograph, and the address of the target premises which is the subject of this warrant.

3

- Additionally I am informed by the Chief McClennan, a security agent at 6 Stuyvesant Oval, Apartment 8H, New York, New York, that defendant maintains a New York residence in addition to that at 6 Stuyvesant Oval.

- I have been a detective with the New York City Police Department for over fourteen years. I am currently assigned to the Vice Enforcement Division, Major Case Unit of the New York City Police Department. I received specialized training in child abuse and sex crimes, and the NYPD Criminal Investigation course. During my tenure as a detective, I have been involved in the investigation of persons engaged in the dissemination of indecent material to a minor, as well as in the possession and trafficking of child pornography. I have participated in the execution of more then 100 search warrants for evidence of these crimes, including search warrants for the seizure and examination of computers and computer-related materials. Based on this training and experience I am familiar with many of the methods by which persons involved in the dissemination of indecent materials to minors and the possession and distribution of child pornography obtain, store, transmit, and traffic in such material.

- Prior search warrant executions that I have participated in have revealed that evidence in computer related crimes is commonly found not only on the hard drive of the seized computers but also on other types of magnetic media including floppy disks, computer tapes, zip-disks, jazz disks, and cd roms. Many of these incriminating files were deleted by the perpetrators only to be retrieved from the seized computer by trained technicians using advanced technology. Moreover, during long term-investigations, I have recovered computers containing incriminating files many months after the files were created, saved or even deleted.

- Based on my experience and training in the Vice Enforcement Division, and specifically the execution of over 100 search warrants for charges of this nature, it is regular practice for defendants to transmit, view, maintain, evidence of the sort sought, in multiple computers, and locations. Digital images may be easily and electronically transferred from one media device to another. In my experience, it is common for defendants to maintain multiple copies of images both at their residence and place of employment.

8.  I believe that it is necessary to execute the search warrant at nighttime- i.e., between the hours of 9:00 PM, and 6:00 AM. My basis for requesting nighttime entry to the target premises is as follows: the evidence being sought, specifically, any electronic or digital evidence, can be easily deleted and/or destroyed, and that other individuals may have access to the target premises.   Specifically, nighttime entry is being sought so that this warrant may be executed prior to defendant's arraignment, upon which, defendant would easily be able to destroy the above described evidence.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure of:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive

positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers in addition to the target computer, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular telephones in addition to the target cell phone with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target premises, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target premises.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

(ii) directing that if such evidence is found, it be brought before the Court. Authorization is also requested to conduct the search at any time of the day or night.

With respect to the stored electronic communications, data, information and images contained in computer disks, CD ROMs and hard drives, described above, it is also requested that this Court grant permission to retrieve the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

No previous application has been made with regard to this Target Premises to any other Judge, Justice, or Magistrate. Attached, is the affidavit and search warrant previously presented to this Court, in this matter.

_____

Detective
Christopher Callow

_____

Lawrence Newman
APPROVED: Assistant District Attorney

Sworn to before me this
October 18, 2007

_____
Judge

**HON. WILLIAM A. WETZEL**                    Name of Court Reporter

6

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER IN THE CITY OF NEW YORK

Proof by affidavit having been made this day before me by Detective Christopher Callow, Shield #1310, of the Vice Enforcement Division, Major Case Unit of the New York City Police Department (i) that there is reasonable cause to believe that certain property, to wit:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers in addition to the target computer, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular telephones with photographic and

7

112

video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target premises, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target premises.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

may be found in the target premises at:

37 West 12th St, Apartment 10F, New York, New York, 10011

YOU ARE THEREFORE COMMANDED, to enter and to search the target premises at:

37 West 12th St, Apartment 10F, New York, New York, 10011;

for the above described property, and if you find such property or any part thereof to bring it before the Court without unnecessary delay and that there are grounds for entry and search and seizure at any time of the day or night.

Furthermore, this Court authorizes law enforcement personnel to videotape and photograph the interior of the target premises; and to analyze, test, and in any way scientifically process the target premises and all the items seized.

Additionally, with respect to the stored electronic communications, data, information and

images contained in computer disks, CD ROMs and hard drives, described above, this Court authorizes the retrieval of the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

This warrant must be executed within 10 days of the date of issuance.

Judge of the Criminal Court

Dated: New York, New York

10/17/07

**HON. WILLIAM A. WETZEL**

9

114

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

37 West 12th St, Apartment 10F, New York, New York, 10011

AFFIDAVIT AND WARRANT

Robert M. Morgenthau
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

115

# EXHIBIT ONE

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

The below locations:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
(Target Premises 1)

2. 121 East 27th St., Suite 315, New York, New York, 10016;
(Target Premises 2)

3. 26 West 9th St., Suite 2D1, New York, New York, 10011.
(Target Premises 3)

## AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT

Detective Sean Ryan, Shield #7910, of the Vice Enforcement Division, Major Case Unit, of the New York City Police Department, being duly sworn, deposes and says:

1.    I am a Detective Sean Ryan, Shield #7910, of the Vice Enforcement Division, Major Case Unit, of the New York City Police Department, and as such I am a public servant of the kind specified in CPL 690.05(1).

### Brief Summary

On or about the evening of October 17, 2007, a maintenance worker responded to a complaint that water was leaking from the apartment of Dr. James Bonczek, at 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009. While inside the apartment, the maintenance worker observed lewd images of children displayed on Dr. Bonczek's computer. These children appeared to be between the ages of from 2-7 years old, with genitalia exposed, posed in a sexually explicit manner. The maintenance worker contacted New York City Police Department, and I, Detective Sean Ryan was assigned this case. At approximately 9:00 AM, October 18, 2007, Dr. Bonczek was arrested as he returned to the above apartment. He has not yet been arraigned.

Dr. James Bonczek is the sole resident of the apartment described above, and maintains two offices in New York County, one at 121 East 27th St., Suite 315, and one at 26 West 9th St., Suite 2D1. He

1

117

is a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist.

This affidavit is submitted in support of an application for a warrant to search:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009; hereinafter Target Premises 1.

2. 121 East 27th St., Suite 315, New York, New York, 10016; hereinafter Target Premises 2.

3. 26 West 9th Street, Suite 2D1, New York, New York, 10011; hereinafter Target Premises 3.

where there is reasonable cause to believe that the following property may be found:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers, computer diskettes,

2

compact disks, digital video disks, media cards, USB media storage devices, cellular, with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- Evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- Any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

3.    Additionally, this warrant is to hereby request the authority to retrieve the above described data, information, images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

4.    It is also requested for evidentiary purposes that this Court grant authorization for law enforcement personnel to videotape the interior of the target locations; and to analyze, test, and any way scientifically process the target locations and all the items seized.

5.    With respect to the stored electronic communications, data, information, and images contained in computer disks, cd roms, media cards, USB devices, digital video disks, media cards, cellular telephones, and hard drives described above, including but not limited to any computers, cell phones, or electronic devices at the target locations, it is also requested that this Court grant permission to retrieve the above described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into another device.

6.    As set forth below, there is reasonable cause to believe that inside the target locations there is property which (i) has been used or is possessed for the purpose of being used, to commit or conceal the commission of an offense and (ii) constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of said offense, to wit, Possession of a Sexual Performance by a Child, Penal Law Section 263.16, Endangering the Welfare of a Child, Penal Law Section 260.10; and related crimes.

3

119

7.    My basis for believing that the property listed above is in the above target locations is as follows:

- I am informed of the following by Sergeant Gregory Vega, a Special Patrolman assigned to the apartment complex at 6 Stuyvesant Oval, New York, New York, 10009: On or about the evening of October 17, 2007, a maintenance worker, in the company of Sergeant Vega, responded to a complaint that water was leaking from the apartment of Dr. James Bonczek, at 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009, Target Premises 1. While inside Target Premises 1, Sergeant Vega, and the maintenance worker, observed lewd images of children displayed on Dr. Bonczek's computer. These children appeared to be between the ages of from 2-7 years old, with genitalia exposed, posed in a sexually explicit manner. Sergeant Vega then reported the above to the New York City Police Department, and I, Detective Sean Ryan was assigned this case.

- Furthermore, at approximately 9:00 AM, October 18, 2007, Dr. Bonczek was arrested as he returned to the above apartment. He has not yet been arraigned. The location has been guarded by New York City Police Detectives since the initial report.

- I have been a detective with the New York City Police Department for over twelve years. I am currently assigned to the Vice Enforcement Division, Major Case Unit of the New York City Police Department. I received specialized training in child abuse and sex crimes, and the NYPD Criminal Investigation course. During my tenure as a detective, I have been involved in the investigation of persons engaged in the dissemination of indecent material to a minor, as well as in the possession and trafficking of child pornography. I have participated in the execution of more then 100 search warrants for evidence of these crimes, including search warrants for the seizure and examination of computers and computer-related materials. Based on this training and experience I am familiar with many of the methods by which persons involved in the dissemination of indecent materials to minors and the possession and distribution of child pornography obtain, store, transmit, and traffic in such material.

- Prior search warrant executions that I have participated in have revealed that evidence in computer related crimes is commonly found not only on the hard drive of the seized computers but also on other types of magnetic media including floppy disks, computer tapes, zip-disks, jazz disks, and cd roms. Many of these incriminating files were deleted by the perpetrators only to be retrieved from the seized computer by trained technicians using advanced technology. Moreover, during long term-investigations, I have recovered computers containing incriminating files many months after the files were created, saved or even deleted.

- I am informed by Sergeant Vega that Dr. James Bonczek was the sole resident of the apartment described above, and that Dr. Bonczek is a Clinical Social Worker and Therapist, trained as a Child and Adolescent Psychoanalytic Psychotherapist. Sergeant Vega also provided a brochure printed advertising Dr. Bonczek. This brochure advertises Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York, 10016,

Target Premises 2, and 26 West 9th Street, Suite 2D1, New York, New York, 10011, Target Premises 3. Additionally I have observed an advertisement on the official "Psychology Today" website advertising Dr. Bonczek's offices to be at 121 East 27th Street, Suite 315, New York, New York 10016, Target Premises 2.

- This website describes Dr. Bonczek's specialty as that of a trained "Child and Adolescent Psychoanalytic Psychotherapist", and discusses his work with behavioral changes and children.

- Based on my experience and training in the Vice Enforcement Division, and specifically the execution of over 100 search warrants for charges of this nature, it is regular practice for defendants to transmit, view, maintain, evidence of the sort sought, in multiple computers, and locations. Digital images may be easily and electronically transferred from one media device to another. In my experience, it is common for defendants to maintain images both at their residence and place of employment.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure of:

- any and all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

5

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers in addition to the target computer, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular telephones in addition to the target cell phone with photographic and video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target locations or other real property, mail addressed to or from the target locations, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

(ii) directing that if such evidence is found, it be brought before the Court.

6

122

With respect to the stored electronic communications, data, information and images contained in computer disks, CD ROMs and hard drives, described above, it is also requested that this Court grant permission to retrieve the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

No previous application has been made in this matter to any other Judge, Justice, or Magistrate.

_____
                                                                Detective
                                                                Sean Ryan

_____
Lawrence Newman
APPROVED: Assistant District Attorney

Sworn to before me this
October 18, 2007

_____
        Judge
HON. WILLIAM A. WETZEL                                  Name of Court Reporter

PT. 34  OCT 1 8 2007

7

123

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER IN THE CITY OF NEW YORK

Proof by affidavit having been made this day before me by Detective Sean Ryan, Shield #7910, of the Vice Enforcement Division, Major Case Unit of the New York City Police Department  (i) that there is reasonable cause to believe that certain property, to wit:

- any and  all images of children or minors under the age of sixteen engaged in sexual acts or dealings with sexual subject matter, or posed in lewd or sexually suggestive positions, whether depicted alone, with other children, with adults, or animals;

- any and all entries, stored information, or communications to or from others making reference to contact or relationships with minor children, including, but not limited to, children engaged in sexual activity, use of a child in a sexual performance, and related crimes, including but not limited to, the trading of the above described images;

- the log file of all activity relating to the accounts of James Bonczek, including all electronic mail and attachments or graphics, read and unread, profiles, buddy lists, newsgroups, "cookies" (shared computer files that indicate that the subject computer was used to access a Website), Websites, e-mail addresses, screen names, or documents related to or requesting pornographic images, performances, conduct or activities;

- data, information, and images, including but not limited to names, nicknames, addresses, numbers including telephone numbers, notes, correspondence, instructions and orders, stored electronic communications, item descriptions, and event descriptions, showing or tending to show the commission of, or connecting or tending to connect a person to the crimes of possessing a sexual performance of a child and related crimes, together with evidence showing or tending to show the identity of the maker or user of the data and information such as passwords, sign-on codes, and program design.

- tangible, or electronic, or digital media dealing with images of children or minors under the age of sixteen engaged in sexual acts or dealing with sexual subject matter, digital or photographic or video cameras (including those of a cellular nature) capable of capturing and preserving images of children or minors under the ages of sixteen engaged in sexual acts, film, videotapes, zip drives, magazines, any personal data assistants, computers in addition to the target computer, computer diskettes, compact disks, digital video disks, media cards, USB media storage devices, cellular telephones with photographic and

8

124

video capabilities, video, software which is capable of manipulating photographic images including but not limited to Paint Shop and Photo Shop;

- evidence of ownership and use of the target locations, or the use of property located therein by any person, including, but not limited to: keys, telephone bills, utility bills, bank statements, leases, deeds or rent receipts related to the target premises or other real property, mail addressed to or from the target locations, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers, tooth and hair brushes, and videotapes; any and all entries, stored information, or communications to or from others, tending to demonstrate James Bonczek's occupancy and use of the target locations.

- evidence which tends to show whereabouts and other locations James Bonczek has had access to, including but not limited log books, calendars, travel logs, passports, itineraries, and airline ticket information.

- any tangible evidence related to the physical sexual exploitation of children, including but not limited to: condoms, prophylactics, sexual paraphernalia.

may be found in the target locations at:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009; Target Premises 1.
2. 121 East 27th St., Suite 315, New York, New York, 10016; Target Premises 2.
3. 26 West 9th Street, Suite 2D1, New York, New York, 10011; Target Premises 3.

YOU ARE THEREFORE COMMANDED, to enter and to search the Target Locations at:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
2. 121 East 27th St., Suite 315, New York, New York, 10016;
3. 26 West 9th Street, Suite 2D1, New York, New York, 10011

for the above described property, and if you find such property or any part thereof to bring it before the Court without unnecessary delay.

Furthermore, this Court authorizes law enforcement personnel to videotape and photograph the interior of the target locations; and to analyze, test, and in any way scientifically process the target premises and all the items seized.

Additionally, with respect to the stored electronic communications, data, information and images contained in computer disks, CD ROMs and hard drives, described above, this Court

125

authorizes the retrieval of the above-described communications, data, information, and images, and print them or otherwise reproduce them by converting them or copying them into storage in another device.

This warrant must be executed within 10 days of the date of issuance.

_____
Judge of the Criminal Court

Dated: New York, New York

10/19/07

HON. WILLIAM A. WETZEL

PT. 34   OCT 1 8 2007

10

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH:

1. 6 Stuyvesant Oval, Apartment 8H, New York, New York, 10009;
(Target Premises 1)

2. 121 East 27th St., Suite 315, New York, New York, 10016;
(Target Premises 2)

3. 26 West 9th St., Suite 2D1, New York, New York, 10011.
(Target Premises 3)

AFFIDAVIT AND WARRANT

Robert M. Morgenthau
District Attorney
New York County
One Hogan Place
New York, New York 10013
(212) 335-9000

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> -against- <br><br> **JAMES BONCZEK,** <br><br> Defendant. | **08 CRIM 361 (PAC)** |

## AFFIDAVIT OF DEFENDANT JAMES BONCZEK IN SUPPORT OF MOTION TO SUPRESS EVIDENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(C)

STATE OF NEW YORK        )
                                :    SS.:
COUNTY OF NEW YORK    )

JAMES BONCZEK, being duly sworn, states as follows:

1.     I am the defendant in the above-captioned case.  I submit this affidavit in support of my Motion To Suppress Evidence Pursuant To Federal Rule Of Criminal Procedure 12(b)(3)(C).

2.     I reside at 6 Stuyvesant Oval, Apartment 8H, in Stuyvesant Town, a private residential development in Manhattan.

3.     Sanford Friedman has been my companion for over thirty years.  I am a regular guest at Mr. Friedman's apartment, located at 37 West 12th Street, Apartment 10F.  I make use of the apartment regularly, sleeping there overnight three nights per week.  I maintain possessions in the apartment, including a computer, clothes, and toiletries.  I have a key to the apartment and I come and go as I please.

4.      I spent the evening of October 17, 2007 at 37 West 12th Street, Apartment 10F with Mr. Friedman.

5.      I returned to my 6 Stuyvesant Oval residence at approximately 9:00 a.m. on October 18, 2007.

6.      When I arrived at 6 Stuyvesant Oval, the front door of my apartment was open. Upon entering the apartment, I encountered a man and a woman on my couch. They identified themselves as New York City police officers and informed me that I was under arrest.

7.      On the table in the entranceway I observed a one page document which the officers told me was a search warrant. They refused to let me examine the document.

8.      Also on the table were my passport, my lease agreement, and a handwritten note. These items were not on the table when I left the apartment on October 17, and I believe them to have been placed on the table by the police.

9.      The NYPD seized from my apartment and produced to my attorneys a handwritten note written by my neighbor Susannah Meaney concerning a water leak. I believe that this was the note I observed on my table on October 17.

10.      Generally, when Stuyvesant Town staff enters my apartment to perform maintenance work, they leave a form indicating what work has been done. When I entered my apartment on October 18, I did not observe such a form. However, such a form indicating that Stuyvesant Town staff entered my apartment on October 17 was seized by the NYPD and produced to my attorneys.

2

11.    When I was placed under arrest on October 18, I observed additional police officers in the apartment.  They were wearing plastic gloves and appeared to be searching the premises.

12. .    After one to two hours, the police escorted me outside the building and into a police car.  They then drove me to a NYPD precinct.

13.    At no time during the above-described events did the police inform me of my right to remain silent and my right to be represented by a lawyer.

14.    At no time during the above-described events did I tell the police that I waived my right to remain silent or my right to be represented by a lawyer.

_James F. Bonczek_
James Bonczek

Sworn to before me this
1st day of July, 2008

Notary Public

GWENDOLYNE M. BROWN
Notary Public, State of New York
No. 01BR6133204
Qualified in Westchester County
Commission Expires September 12, 2009

3

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 5/01)-Pent

*Check only one of the below categories.*

**N889549**

☒ ARREST EVIDENCE    ☐ DECEDENT'S PROPERTY    ☐ FOUND PROPERTY

☐ INVESTIGATORY    ☐ PEDDLER PROPERTY    ☐ OTHER _____

DATE PREPARED: October 18    YR 2007    PCT. 013 pct

| Arresting/Assigned Officer | Rank | Shield No. | Tax Reg. No. | | Command |
|---|---|---|---|---|---|
| Ryan, Sean | DET | 7910 | | | VED. Vice |

| Prisoner's Last Name | First | Age | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| Bonczek, James F | | 58 | 6 Stuyvesant Oval #8F | 01 | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 10-18-07 | M07690669 | Penal law 263.16 | ☒ | ☐ | ☐ | ☐ | 013-09393 |

| Finder of Property | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Ryan, Sean | 1 Police Plaza New York | |

| Owner's Name (See Instructions) | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Bonczek, James F | 6 Stuyvesant Oval #8F | |

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| P.S.N.Y | 1 Police Plaza    NY NY | |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) | AND DATE |
|---|---|---|---|---|---|
| 01 | 01 | Apple I-Book s/n UV1242MDLAN | | | |
| | | above is a complete list of all items vouchered | | | |
| | | sec env #c417556 | | | |
| | | | | | |
| | | TOTAL | | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes   ☐ Refused

| R.T.O. | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*

At t/p/o above item was removed and confiscated under the supervision of Sgt. Minca from the Vice Major Case Unit from the bedroom desk sec env # C417556

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY:

| | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

**N889549**

DISTRIBUTION: WHITE - Prop. Clk. File    SECOND WHITE - Inventory Unit Copy    YELLOW - Prop. Clk. Work Copy

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 5/01)-Pent

*Check only one of the below categories.*

**N889546**

[X] ARREST EVIDENCE  [ ] DECEDENT'S PROPERTY  [ ] FOUND PROPERTY

[ ] INVESTIGATORY  [ ] PEDDLER PROPERTY  [ ] OTHER _____

DATE PREPARED: **October 18**  YR **2007**  PCT **013pct**

| Arresting/Assigned Officer | | Rank DET | Shield No. 7910 | Tax Reg. No. | Command VED/Vice |
|---|---|---|---|---|---|

Ryan, Sean

| Prisoner's Last Name | First | Age 58 | Address (Include City, State, Zip Code, Apt.) 6 Stuyvesant Oval New York #8 | No. of Prisoners 01 | Acc./Aided # |
|---|---|---|---|---|---|

Bonczek, James F

| Date of Arrest 10-18-07 | Arrest No. M07690669 | Charge/Offense Under Investigation Penal Law 263.16 | Fel. [X] | Misd. [ ] | J.D. [ ] | Viol. [ ] | Complaint No. 013-09393 |
|---|---|---|---|---|---|---|---|

| Finder of Property | Address (Include City, State, Zip Code, Apt.) 1 Police Plaza New York NY | Telephone No. |
|---|---|---|

Ryan, Sean

| Owner's Name (See Instructions) | Address (Include City, State, Zip Code, Apt.) 6 Stuyvesant Oval New York NY | Telephone No. |
|---|---|---|

Bonczek, James F

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) 1 Police Plaza | Telephone No. |
|---|---|---|

P.S.N.Y

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 01 | 04 | U.S.A Passport | | |
| 02 | 01 | NYS Driver License (Bunczek) | | |
| 03 | 01 | NY State ID Card (Cortez) | | |
| 04 | 06 | Address/Planner books | | |
| 05 | 01 | 2004 Calendar | | |
| 06 | 27 | Misc Paperwork | | |
| 07 | 32 | Misc pictures | | |
| 08 | 03 | Books | | |
| 09 | 01 | Olympus Digital Voice Recorder | | |
| 10 | 01 | Large ziplock bag of Condoms | | |
| | | complete list of all items vouchered | TOTAL | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued [ ] Yes [ ] Refused

Property Clerk Storage Location

**R.T.O.**

| Owner/Claimant's Signature | Date | Time |
|---|---|---|

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*

At t/p/o above items were recovered during a search warrant at the above pri prisoner's residence under the supervision of Sgt. Minca-VED  sec env # c417

C417557

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|

PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY:

| | Rank | Name | Command |
|---|---|---|---|

Property Clerk's Signature

**N889546**

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 5/01)-Peni

*Check only one of the below categories.*

## N889543

☒ ARREST EVIDENCE            ☐ DECEDENT'S PROPERTY            ☐ FOUND PROPERTY

☐ INVESTIGATORY            ☐ PEDDLER PROPERTY            ☐ OTHER _____

DATE PREPARED: **October 18, 2007**   YR **2007**   PCT **013**

| | | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| Arresting/Assigned Officer **Ryan, Sean** | | **DET** | **7910** | ~~~~ | **VED/Major Cas** |

| Prisoner's Last Name **Bonczek, James** | First **F** | Age **58** | Address (Include City, State, Apt.) **6 Stuyvesant Oval NY NY #8H** | No. of Prisoners **01** | Acc./Aided # ------ |
|---|---|---|---|---|---|

| Date of Arrest **10-18-07** | Arrest No. **M07690669m** | Charge/Offense Under Investigation **Penal Law 263.16** | Fel. ☒ | Misd. ☐ | J.D. ☐ | Viol. ☐ | Complaint No. **013-09393** |
|---|---|---|---|---|---|---|---|

| Finder of Property **Detective Ryan** | Address (Include City, State, Zip Code, Apt.) **1 Police Plaza New York NY** | Telephone No. ~~~~ |
|---|---|---|

| Owner's Name (See Instructions) **Bonczek, Semes F** | Address (Include City, State, Zip Code, Apt.) **6 Stuyvesant Oval New York NY** | Telephone No. |
|---|---|---|

| Complainant's Name **P.S.N.Y** | Address (Include City, State, Zip Code, Apt.) **1 Police Plaza New York NY** | Telephone No. ~~~~ |
|---|---|---|

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION | (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|---|
| 01 | 01 | RCA Video Camera S/N#041370967 | | | |
| 02 | 13 | VHS Tapes | | | |
| 03 | 07 | VHS 8MM Tapes | | | |
| 04 | 01 | Power Supply | | | |
| | | Above is a complete list of all items vouchered | | | |
| | | sec env # C417559 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL | | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes   ☐ Refused

| | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|
| **R.T.O.** | | | | |

REMARKS: *Briefly explain why the property was taken into custody (see Instructions on BACK OF BLUE COPY).*

**At t/p/o above items were recovered from bedroom closet of Prisoner's residence and removed pursuant to the execution of a search warrant.**

sec env #c417559

| Rank and Signature of Duty Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|
| | ~~~~ | | |

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|
| | | | |

Property Clerk's Signature

## N889543

# PROPERTY CLERK'S INVOICE

PD 521-141 (Rev. 5/01)-Pent

*Check only one of the below categories.*

**N889550**

☒ ARREST EVIDENCE   ☐ DECEDENT'S PROPERTY   ☐ FOUND PROPERTY

☐ INVESTIGATORY   ☐ PEDDLER PROPERTY   ☐ OTHER

DATE PREPARED: **October 18, 2007** YR   PCT. ████ pct

| Arresting/Assigned Officer | Rank | Shield No. | Tax Reg. No. | Command |
|---|---|---|---|---|
| Ryan, Sean | DET | 7910 | ████ | VED/Vice |

| Prisoner's Last Name | First | Age | Address (Include City, State, Zip Code, Apt.) | No. of Prisoners | Acc./Aided # |
|---|---|---|---|---|---|
| Bonczek, James F | | 58 | ██████████ Oval New York | 01 | |

| Date of Arrest | Arrest No. | Charge/Offense Under Investigation | Fel. | Misd. | J.D. | Viol. | Complaint No. |
|---|---|---|---|---|---|---|---|
| 10-18-07 | M07690669 | Penal Law 263.16 | ☒ | ☐ | ☐ | ☐ | 013-09393 |

| Finder of Property | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Ryan, sean | 1 Police Plaza New York NY | ████ |

| Owner's Name (See Instructions) | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| Bonczek, James F | 6 Stuyvesant Oval New York NY | |

| Complainant's Name | Address (Include City, State, Zip Code, Apt.) | Telephone No. |
|---|---|---|
| P.S.N.Y | 1 Police Plaza New York Ny | ████ |

| ITEM NO. | QUANTITY | ARTICLE | CASH VALUE U.S. Currency Only | DISPOSITION (For Property Clerk's Use Only) AND DATE |
|---|---|---|---|---|
| 01 | 02 | Receipts | | |
| 02 | 01 | Handwritten Note | | |
| 03 | 01 | Apartment visit slip | | |
| 04 | 02 | Shent Response sheet | | |
| 05 | 02 | CD's | | |
| | | above is a complete list of all items vouchered | | |
| | | sec env #E685864 | | |
| | | TOTAL | | |

Additional Invoice Nos. Related to This Case Including Motor Vehicles

Pink Receipt Copy of Voucher Issued ☐ Yes ☐ Refused

| | Owner/Claimant's Signature | Date | Time | Property Clerk Storage Location |
|---|---|---|---|---|
| **R.T.O.** | | | | |

REMARKS: *Briefly explain why the property was taken into custody (see instructions on BACK OF BLUE COPY).*

Above items were recovered during a search warrant under the supervision of Sgt. Minca of the Vice Major Case Unit    sec env #E685864

| Rank and Signature of Desk Officer | Tax No. | Signature of Arresting/Assigned Officer | Boro Storage No. |
|---|---|---|---|
| | | | |

| PROPERTY ON THIS VOUCHER DELIVERED TO PROPERTY CLERK'S OFFICE BY: | Rank | Name | Command |
|---|---|---|---|
| Property Clerk's Signature | | | |

**N889550**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JAMES BONCZEK,

Defendant.

PEOPLE'S VOLUNTARY
DISCLOSURE FORM

Indictment No.  06006/2007

The People of the State of New York hereby voluntarily disclose to the defendant the following factual information pertaining to the above-captioned case:

### A.      BILL OF PARTICULARS

1.      OCCURRENCE

|  |  |
|---|---|
| Date: | October 17, 2007 |
| Place: | 6 Stuyvesant Oval |

2.      ARREST

|  |  |
|---|---|
| Date: | October 18, 2007 |
| App. Time: | 9:10 AM |
| Place: | 6 Stuyvesant Oval |

### B.      NOTICES

1.      STATEMENTS

☒ If checked, notice is hereby served, pursuant to CPL §710.30(1)(a), that the People intend to offer at trial evidence of a statement made by defendant to a public servant. *(Where a statement has been video taped, counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time for viewing the tape or should provide a blank tape for copying.)*

|  |  |
|---|---|
| Statement #: | 1 |
| Date: | October 18, 2007 |
| Approximate Time: | 9:10 AM |
| Location: | in transport from 6 Stuyvesant Oval and 80 Centre St. |
| Individual Made To: | Sergeant Minca |

Substance of Statement:    THIS WON'T STICK, I CAN'T BE PROSECUTED
FOR MY SEXUAL PREFERENCES

2.    <u>IDENTIFICATION</u>

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(b), that the People intend to offer at trial testimony regarding an observation of defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the indictment, to be given by a witness who has previously identified defendant.

## C.    **DISCOVERY**

1.    <u>ADDITIONAL STATEMENTS</u>

☐ If checked, the People hereby disclose written, oral or recorded statements of a defendant or of a co-defendant to be jointly tried, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him, and which statements are not given in section B(1) above. C.P.L. §240.20(1)(a).

2.    <u>GRAND JURY TESTIMONY</u>

☐ If checked, defendant or a co-defendant to be tried jointly testified before the Grand Jury relating to this criminal action. C.P.L. §240.20(1)(b). *Such testimony is available upon payment of a stenographic fee.*

3.    <u>SCIENTIFIC AND MEDICAL REPORTS</u>

☒ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical or mental examination or scientific test or experiment, relating to this criminal action, which were made by, or at the request or direction of a public servant engaged in law enforcement, or by a person whom the People intend to call as a witness of a trial, or which the People intend to introduce at trial. C.P.L. §240.20(1)(c).

|  | Already Served | Attached | Will Be Provided |
|---|---|---|---|
| Computer Analysis Report | ☐ | ☐ | ☒ |

4.    <u>PHOTOGRAPHS AND DRAWINGS</u>

☒ If checked, there exists photographs or drawings relating to this criminal action which were made or completed by a public servant engaged in law enforcement, or which were made by a person whom the People intend to call as a witness at trial, or

which the People intend to introduce at trial. C.P.L. §240.20(1)(d). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this material.)*

5.    INSPECTION OF PROPERTY

☒ If checked, there exist photographs, photocopies or other reproductions made by or at the direction of a police officer, peace officer or prosecutor of property prior to its release pursuant to the provisions of Penal Law Section 450.10, irrespective of whether the People intend to introduce at trial the property or the photograph, photocopy or other reproduction. C.P.L. §240.20(1)(e). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this property.)*

6.    OTHER PROPERTY

☒ If checked, there exists other property obtained from the defendant, or a co-defendant to be tried jointly, C.P.L. §240.20(1)(f), or from another source. *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to examine this property.)*

  a.  Numerous computers, and accessories from both 6 Stuyvesant Oval, as well as 37 West 12th St
  b.  Numerous VHS cassettes other visual cassettes from 6 Stuyvesant Oval
  c.  Books of Child Erotica, Man Boy Love, and others
  d.  Numerous journals, calendars, date books
  e.  Defendant's passports, drivers licenses, mailings
  *(itemized list to be filed and served)*

7.    TAPES AND ELECTRONIC RECORDINGS

☒ If checked, there exist tapes or other electronic recordings which the People intend to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction. C.P.L. §240.20(1)(g). *(Counsel should contact the assigned Assistant District Attorney to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying.)*

8.    BRADY MATERIAL

☐ If checked, there is material appended which the People are required to turn over pursuant to the United States or the New York State Constitution. The People are aware of their continuing obligation to disclose material exculpatory information to defendant and intend to satisfy that obligation as required by law. C.P.L. §240.20(1)(h).

9.    COMPUTER OFFENSES

☐ If checked, discovery is hereby served pursuant to C.P.L. §240.20(1)(j) of the time, place and manner of notice given pursuant to Penal Law §156.00(6), which governs offenses for Unauthorized Use of a Computer (Penal Law §156.05) and Computer Trespass (Penal Law §156.10).

10.   POLICE OFFICERS INVOLVED

The following are some of the officers who were involved in the arrest or police investigation.

| Name | Shield | Command |
| --- | --- | --- |
| Detective Sean Ryan | 7910 | Vice Enforcement Division |
| Detective Christopher Callow | 1310 | Vice Enforcement Division |
| Sergeant Robert Minca | 067 | Vice Enforcement Division |

11.   SEARCH WARRANTS

☒ If checked, a search warrant was executed during the investigation of this case.

D.    **DEMAND FOR NOTICE OF ALIBI**

Pursuant to CPL §250.20, the People hereby demand that defendant supply the District Attorney with (a) the place or places where the defendant claims to have been at the time of the commission of the crime(s) and (b) the names, residential addresses, places of employment and addresses thereof of every alibi witness upon whom defendant intends to rely to establish his presence elsewhere than at the scene of the crime at the time of its commission. Within a reasonable time after the receipt of the information specified above, the District Attorney will submit a list of any rebuttal witnesses, their addresses, and employers.

E.    **RECIPROCAL DISCOVERY**

Pursuant to CPL §240.30(1), the People hereby demand that defendant supply the District Attorney with (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce such report or document at trial, or if defendant has filed a notice of intent to proffer psychiatric evidence and such report or document which relates thereto or if such report or document was made by a person other than defendant, whom defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

**NOTE**: Any defense motion or request addressed to the above-captioned case should be directed to the attention of the Assistant District Attorney named below, who is assigned to this case.

Dated:    New York, New York
          December 12, 2007

                              Robert M. Morgenthau
                              District Attorney
                              One Hogan Place
                              New York, NY 10013

By:       Lawrence Newman
          Assistant District Attorney
          335-4243

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America                CR-97-00300 (CPS)

      - against -                        MEMORANDUM
                                        AND ORDER
Thomas Jasorka,

                    Defendant.

----------------------------------------X

SIFTON, Chief Judge

        Defendant Thomas Jasorka moves to suppress evidence
seized during a search of his apartment alleging several
deficiencies in the search warrant and the scope of the search.
For the reasons stated below, all materials seized during the May
20, 1996 search of Jasorka's apartment are suppressed.

**BACKGROUND**

        The following facts are undisputed for purposes of this
motion unless otherwise noted.

        On May 14, 1996, during a routine inspection, United
States Customs agents intercepted a package containing allegedly
pornographic pictures of male children.  The photos are alleged
by the prosecution to depict children exhibiting their genitals
and pubic areas in a lewd and lascivious manner.  The parcel was
addressed to 61-41 Saunders Street, Apartment A31, Rego Park, NY
11374 and was sent from the Netherlands.  On May 17, 1996,

-2-

Customs agents intercepted another package containing similar photographs sent to Thomas Jasorka at the same address.

Customs Agent Peter Quaglia investigated the matter.[1] Quaglia verified that Thomas Jasorka resided at 61-41 Saunders Street, in apartment A31 and regularly received mail at that address. Until 1994, his mail carrier was determined to have delivered videotapes and other large parcels to Thomas Jasorka personally. Currently, she delivers such parcels to the building superintendent who is authorized by Thomas Jasorka to accept these parcels.

After consulting with the U.S. Attorney's office, Quaglia signed an affidavit in support of an application for an anticipatory search warrant. Quaglia's affidavit contained the information set forth above. In addition, Quaglia asserted that individuals who buy, produce, trade, or sell child pornography have several general characteristics. These individuals collect sexually explicit materials such as photographs, magazines, motion pictures, videotapes, books, slides, or computer generated images, rarely, if ever, disposing of those materials. According to Quaglia, the materials give the individuals sexual gratification and are treated as prized possessions. Such individuals also tend to cut out pictures of children from legitimate publications as well as writings on the subject of

---

[1] Agent Quaglia has been employed with the Customs Service for seven years. Quaglia is currently assigned to the General Investigative Division and investigates the illegal importation of child pornography among other things. How long he has been so assigned is not established by the record.

-4-

stationed in the hallway outside Jasorka's apartment would observe Jasorka take the package into his apartment.[2]  Once the packages were observed to have been delivered, the search warrant would be executed.

On May 20, 1996, AUSA Dolan Garret and Agent Quaglia appeared before Magistrate Judge Roanne Mann to request the search warrant for Jasorka's apartment and an arrest warrant for Jasorka.  Agent Quaglia's affidavit was presented to the magistrate.  What happened next is the subject of dispute.  There is no recording or transcript clarifying what happened.

Originally, the prosecution asserted that Agent Quaglia remembered being questioned by the magistrate about the contents of the two packages and describing the photographs to her. However, in an affidavit submitted thereafter by the prosecutor, Magistrate Judge Mann stated that she does not believe she received additional oral information from Agent Quaglia about the photographs.  She does not as a matter of routine record or transcribe the application process.  Her standard practice is to have the affiant incorporate into his affidavit any additional information supplied during the application process prior to swearing to the truth of the affidavit.  Magistrate Judge Mann believes that she followed her standard practice in this case because she required Agent Quaglia to make handwritten corrections to one section of the affidavit prior to issuing the

---

[2] This second requirement is handwritten on the original copy of Agent Quaglia's affidavit.  It replaces a typewritten paragraph stating that the packages would not be delivered to a child.

-5-

search warrant. No affidavit from Agent Quaglia describes his recollection of the application process. In AUSA Garret's affidavit, he states that he does not remember what transpired during the application process but that he had the photographs with him when he applied to Magistrate Judge Mann for the search warrant.

In her affidavit, Magistrate Judge Mann asserts that Mr. Garret recently showed her copies of the photographs contained in the two packages sent to defendant and that the photographs looked familiar. Based on this, she assumes that she viewed at least some of the photographs prior to issuing the warrant. Magistrate Judge Mann has, however, issued other search warrants for child pornography and has viewed pornographic photographs in other cases. Magistrate Judge Mann asserts that ordinarily, if she has viewed a photograph during the warrant application process, that photograph would be attached to the supporting affidavit and would be incorporated into the affidavit by reference. No photographs are attached or referred to in Quaglia's affidavit in support of the application for a search warrant.

Defense attorney Paul Bergman submits an affidavit stating that AUSA Garret told him that he, Garret, had not seen the photographs until after the search. Mr. Bergman also sent a letter to AUSA Margaret Giordano dated November 11, 1996. The letter stated that neither the magistrate or AUSA Garret saw the photographs prior to the search and argued that the warrant

-6-

application process was improper. Mr. Bergman asserts that he did not receive any response at that time asserting that the photographs were shown to the magistrate.

In all events, on May 20, 1996, Magistrate Judge Mann signed a search warrant for apartment A31, 61-41 Saunders Street, Rego Park, New York, permitting agents to search for:

> Videotapes of child pornography
> Films of child pornography
> Magazines of child pornography
> Negatives of child pornography
> Photographs of child pornography
> Child erotica items
> Correspondence to and from distributors of child
>   pornography
> Correspondence and information about exchanges of child
>   pornographic material between collectors of child
>   pornographic material
> Lists, diaries and directories containing information
>   concerning others with similar sexual interests
> Photographic and video equipment
> Computer equipment, including hard drives, modems, and
>   all peripheral devices

The search warrant recited that the affidavit and "recorded testimony" established probable cause to believe that the above property was concealed in apartment A31.

On May 20, 1996, Customs agents made a controlled delivery of the two packages to defendant. In a memorandum of law submitted in response to the motion, the prosecution states that Customs agents positioned themselves where they could observe apartment A31 and the building superintendent's apartment. At 9:00 p.m., defendant unlocked the door to apartment A31. Defendant then went to the building superinten-dent and accepted the packages containing the photographs. Defendant returned to his apartment taking the packages with him.

-7-

The superintendent identified the defendant as Thomas Jasorka.
At that time, Customs agents arrested defendant and searched his
apartment.  Upon entering the apartment, the agents viewed
numerous pornographic pictures of children on the coffee table,
the mantle, and on the end tables in frames.  All other rooms of
the apartment contained similar pictures.  In all, the agents
seized fifty-two boxes of material containing child pornography.

On May 21, 1996, Jasorka was arraigned before
Magistrate Judge Mann.  On May 24, 1996, Special Agent Anthony
Giattino, one of the agents present during the May 20, 1996
search, applied to Magistrate Judge Mann for another search
warrant.  Agent Giattino's affidavit stated that a box containing
items seized during the May 20th search was inadvertently left
behind in Jasorka's apartment.  On that day, Magistrate Judge
Mann issued a second search warrant for Jasorka's apartment
limiting the search to that box.

Defendant waived his right to a grand jury indictment
and has been charged in an information with "knowingly and
intentionally possessing three or more books, magazines, films,
videotapes, and other matter which contained visual depictions
that had been mailed, shipped and transported in interstate and
foreign commerce, the production of which visual depictions
involved the use of minors engaging in sexually explicit conduct
and which visual depictions were of such conduct" in violation of
18 U.S.C. § 2252(a)(4)(B) and (b)(2).

-8-

Defendant then moved to suppress all items seized pursuant to the two search warrants. On June 10, 1997, I requested further briefing on the issue arising out of the prosecution's assertion that Agent Quaglia provided an unrecorded oral description of the photographs to Magistrate Judge Mann in apparent violation of Rule 41(c)(1) of the Federal Rules of Criminal Procedure. While both the defendant and the prosecution submitted additional papers, neither addressed the issue.

On June 18, 1997, additional oral argument was held on defendant's motion. During oral argument, I requested an affidavit from Magistrate Judge Mann and further briefing on the application of the good-faith exception doctrine to the issues before the Court.

### DISCUSSION

Section 2252 of Title 18 to the United States Code criminalizes the knowing possession of three or more books, magazines, periodicals, films, video tapes, or other matter which contain:

> any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

18 U.S.C. § 2252(4). Sexually explicit conduct means:

> (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between person of the same or opposite sex;
> (B) bestiality;

-9-

 (C) masturbation;
 (D) sadistic or masochistic abuse; or
 (E) lascivious exhibition of the genitals or pubic
    area of any person.

18 U.S.C. § 2256(2).

   Possession of visual depictions of minors engaged in sexually explicit conduct can be criminalized because such material falls outside of the First Amendment. *See New York v. Ferber*, 458 U.S. 747, 765 (1982). As long as the material contains a depiction of a minor engaged in any of the five acts defined in 18 U.S.C. § 2256(2), that material is presumptively not protected by the First Amendment and may be regulated.[3/] *See id.*

   While the first four categories of sexually explicit conduct defined in 18 U.S.C. § 2256(2) are relatively self-explanatory, the fifth is not. "Whatever the exact parameters of 'lascivious exhibition,' we find it less readily discernable than the other, more concrete types of sexually explicit conduct listed in section 2256(2)." *United States v. Villard*, 885 F.2d 117, 121 (3rd Cir. 1989). It is clear, however, that the

---

   [3/] The *Ferber* Court recognized that the New York statute, whose constitutionality it upheld, might proscribe some visual depictions of children engaged in explicit sexual conduct protected by the First Amendment. Like the federal statute, the New York statute defined explicit sexual conduct as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." *Ferber*, 458 U.S. at 750. The Court speculated that some educational, medical, or artistic works might require producing depictions of these types of explicit sexual conduct but yet might be protected by the First Amendment. However, this possibility amounted to a tiny fraction of the materials proscribed by the New York statute. Therefore, the Court concluded that the statute was not overbroad and, thus, was constitutional. *See id.* at 773-74.

-10-

statutory definition of "lascivious exhibition" includes

depictions of clothed children, *United States v. Knox*, 32 F.3d

733, 745 (3rd Cir. 1994), and conversely does not extend to all

depictions of nude children, *Osborne v. Ohio*, 495 U.S. 103, 112

(1990). Therefore, to avoid infringing on expression protected

by the First Amendment, courts should avoid giving an expansive

construction to the term "lascivious." *See Ferber*, 458 U.S. at

773.

Lasciviousness is a term which "embodies the

contemporary customs and conventions of a community." *United*

*States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987).

Lasciviousness can be determined by applying the six factors

developed in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal.

1986). The factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> (4) whether the child is fully or partially clothed, or nude;
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> (6) whether the visual depictions is intended or designed to elicit a sexual response in the viewer.

*Id*. at 832. Other courts have adopted this six factored test for

lasciviousness even though the *Dost* factors were criticized on

-11-

appeal.[4/]  *See United States v. Wolf*, 890 F.2d 241, 244 (10th

Cir. 1989); *United States v. Villard*, 885 F.2d 117, 122 (3rd Cir.

1988); *United States v. Robinson*, 1997 WL 136430, at *6-7 (D.

Mass. March 7, 1997); *Rhoden v. Morgan*, 863 F. Supp. 612, 619

(N.D. Tenn. 1994), *aff'd*, 97 F.3d 1452 (6th Cir. 1996); *United

States v. A.*, 756 F. Supp. 326, 328 (E.D. Mich. 1991); *United

States v. Pullen*, 41 M.J. 886, 888 (A.F.C.M.R. 1995).

Prior to the Supreme Court's decision in *New York v.*

*Ferber*, 458 U.S. 747 (1982), most lower courts would not have

upheld the constitutionality of 18 U.S.C. §§ 2252, 2256(2).

These courts had limited the regulation of child pornography to

"obscene" child pornography.  *See Ferber*, 458 U.S. at 753.

Obscene materials are not given First Amendment protection, *Roth*

*v. United States*, 354 U.S. 476, 481 (1957), and are defined as

"works which, taken as a whole, appeal to the prurient interest

in sex, which portray sexual conduct in a patently offensive way,

and which, taken as a whole, do not have serious literary,

artistic, political, or scientific value."  *Miller v. California*,

413 U.S. 15, 24 (1973).

---

[4/] Although the Ninth Circuit agreed with the district court's
determination that the pictures in *Dost* were lascivious, it found the test
established by the district court overbroad.  The Ninth Circuit stressed that
lasciviousness involves a visual depiction of a child's genitalia displayed in a
manner calculated "to arouse or satisfy the sexual cravings of a voyeur."
*Wiegand*, 812 F.2d at 1244.  Therefore, a lasciviousness determination should
focus on the maker of the visual depiction rather than the characteristics of the
child in the visual depiction.  *See id.*

-12-

In *Ferber*, the Court determined that the reasons for regulating child pornography are different from and stronger than the reasons for regulating obscenity. Therefore, the Court concluded:

> The test for child pornography is separate from the obscenity standard enunciated in Miller, but may be compared to it for the purpose of clarity. The Miller formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole.

*Ferber*, 458 U.S. at 764. In other words, the *Ferber* Court held that both child pornography and obscene material are outside of the First Amendment but that not all child pornography needs to be obscene. *See id.*

Nothing in the distinction made between child pornography and obscene material in *New York v. Ferber* changed the basis rules about the relative roles of law enforcement officers and magistrates in determining whether printed material is obscene or pornographic. It is well established that it is unconstitutional to issue a search warrant for obscene materials based solely upon a law enforcement officer's conclusory statement. *See Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637 (1968). Instead, the search warrant "must be supported by affidavits setting forth specific facts in order that the issuing magistrate may 'focus searchingly on the question of obscenity.'" *New York v. P.J. Video, Inc.*, 465 U.S. 868, 873-74 (1986)

-13-

(quoting *Marcus v. Search Warrants*, 367 U.S. 717, 732 (1961)).

If the affidavit is sufficiently detailed, the magistrate need
not review the material for herself. *See id.* at 875 n.5. This
requirement is necessary because it is the magistrate, not the
law enforcement officer, who decides whether there is probable
cause to believe that the material to be seized is obscene and
not protected by the First Amendment. *See id.*[5/]

    The prosecution argues that the requirement of a
particularized affidavit or a personal viewing of the material by
the magistrate for obscene materials does not apply to search

---

[5/] Defendant argues that due to First Amendment concerns, the magistrate
issuing a search warrant must view all visual depictions alleged to be lascivious
exhibitions of a minor rather than relying on a law enforcement officer's
conclusion that the depictions are lascivious. Defendant's argument is contrary
to *P.J. Video*, 465 U.S. at 875 n.5. The most defendant can argue is that the
magistrate issuing the warrant should either view the materials or get a
sufficiently detailed affidavit describing the materials. The defendant's
reliance on *DePugh v. Penning*, 888 F. Supp. 959 (N.D. Iowa 1995), and *United
States v. Villard*, 885 F.2d 117 (3rd Cir. 1989), to support his argument is
misplaced.

    In *DePugh*, while the court found the search warrant unconstitutional in
part because the issuing magistrate failed to review any of the materials to be
seized by the warrant, the warrant did not seek only child pornography but also
other material presumptively protected by the First Amendment. *See id.* at 969,
989. The affidavit in support of the warrant asserted that an informant saw
"Minutemen" literature and a photo of a young female in a bathing suit in a box
at the defendant's premises. *See id.* at 987. The district court then stated
that this information did not provide probable cause to believe that the
defendant possessed child pornography, obscene material, or subversive
literature. *See id.*

    In *Villard*, the court found that a jury generally should view visual
depictions alleged to be a lascivious exhibition of a minor's genitals or pubic
area prior determining whether defendant is guilty of possession such material.
The court continued: "Our holding does not necessarily preclude the government
from ever supporting a finding of lasciviousness solely by introducing testimony
describing photographs, without the actual photographs in evidence (although our
view of such cases is circumspect)." *Villard*, 885 F.2d at 125-26.

    Neither case can stand for the proposition that the requirements for search
warrants for lascivious child pornography are more rigorous than the requirements
set forth by the Supreme Court for search warrants for obscene material.

-14-

warrants for child pornography because child pornography is not protected by the First Amendment.  That argument is flatly wrong. Neither child pornography nor obscenity is protected by the First Amendment.  *See Roth*, 354 U.S. at 481.  The purpose of a particularized affidavit in both cases is to ensure that protected material (i.e., non-obscene or non-pornographic material) is not subject to seizure.

The prosecution argues more persuasively that not all of the warrant procedures developed in the obscenity cases are not necessary for warrants for child pornography.  The prosecution's argument rests on *United States v. Smith*, 795 F.2d 841 (9th Cir. 1986).  In *Smith*, a photo developer provided agents with photographs taken by the defendant depicting sadistic and masochistic abuse of young girls.  The investigating agent submitted an affidavit to a magistrate asserting that photographs depicting sexually explicit conduct within the meaning of 18 U.S.C. § 2256(2) were found, that a pediatrician determined that the subjects of the photographs were under eighteen, that the defendant admitted he took the photographs and would take more if the photographs were not returned to him, and that the subjects of the photographs were interviewed and stated that the defendant had a "whip-like" device at his house.  *See id*. at 849.  Without examining the photographs, the magistrate issued a search warrant.  *See id*. at 848.

-15-

Although troubled by the failure of the government to show the photographs to the magistrate, the court examined the affidavit as a whole and determined that it provided probable cause for the search warrant. *See id.* at 847. The court continued:

> An affidavit that merely alleges that certain photographs are "obscene," therefore, makes a compli- cated and subjective conclusion unsuitable for an independent judicial evaluation and therefore inadequate for the issuance of a warrant. In contrast, the constitutional requirements for a child pornography statute are much simpler and more susceptible to credible assertion in an affidavit. ... An assertion that certain pictures depict "sexually explicit conduct" prohibited by section 2251 and 2252 does not require of the affiant extensive knowledge of the prurient interest of the average person, or what portrayals of sexual conduct are patently offensive, or of literary, artistic, political, or scientific criteria for "serious merit." The affiant need only be able to identify the specific, clearly defined acts listed in section 2255. This identification is certainly "conclusory" to a certain extent, but it is a conclusion based on observation and not, as in the case of "obscenity," one based on evaluation.

*Id.* at 848 n.7 (citations omitted).

Defendant concedes that the reasoning in *Smith* applies to most of the categories of sexually explicit conduct defined in 18 U.S.C. § 2256(2). Defendant argues, however, that a magistrate cannot rely on conclusory allegations of law enforcement officers if the material to be seized is alleged to be a "lascivious exhibition" proscribed under 18 U.S.C. § 2256(2)(E).

I agree. It is logical to permit a magistrate to issue a warrant based on a law enforcement officer's conclusory

-16-

allegations that the material to be seized depicts children

engaged in sexual intercourse, bestiality, masturbation, and

sadistic or masochistic abuse.  This conduct is proscribed under

18 U.S.C. § 2256(2)(A)-(D) and is easily identifiable by a law

enforcement officer who submits an affidavit in support of a

search warrant.  The law enforcement officer does not need to

evaluate the content of the material.  Whenever material depicts

a child engaging in such acts, that material is outside of the

First Amendment and subject to seizure.

        In contrast to materials falling into the first four

categories of sexual explicit conduct under 18 U.S.C. § 2256(2),

lascivious materials falling within the fifth category can be

much harder to identify.  Visual depictions of clothed and nude

children can be either protected by the First Amendment or,

alternatively, proscribed as lascivious.  *See Osborne*, 495 U.S.

at 112; *United States v. Knox*, 32 F.3d 733, 745 (3rd Cir. 1994).

A sensitive analysis must be used to separate the visual

depictions of children not falling into 18 U.S.C. § 2256(2)(A)-

(D) into those depictions protected by the First Amendment and

those that are not.  *See Dost*, 636 F. Supp. at 832.  There is no

easy answer or objective circumstance that would make a

particular depiction of a clothed or nude child lascivious.[6]

Accordingly, when a law enforcement officer states that the

---

        [6] For example, in *Villard*, 885 F.2d at 123-24, the Third Circuit held that the fact that a photograph depicts a child with an erection is not sufficient to find that photograph lascivious and, thus, illegal to possess.

-17-

material to be seized is lascivious, that officer is evaluating the content of the material and deciding for himself or herself whether that material is protected by the First Amendment.

For these reasons, before issuing a search warrant based on material alleged to be a lascivious depiction of a child, a magistrate is required by precedent and common sense to view the depiction or to receive a sufficiently detailed description of the visual depiction to permit him or her to decide the issue prior to issuing the search warrant.

In this case, the prosecution has not sustained its burden of proof that either procedure was followed. No one present during the warrant application process remembers exactly what happened.[2/] There is no transcript or other contemporaneous record establishing that the magistrate viewed the photographs or received additional details about the photographs during the warrant application process. Since the May 20, 1996 warrant rests solely on Agent Quaglia's affidavit, it violated the constitution and any materials seized pursuant to it should be suppressed

---

[2/] The prosecution submitted affidavits from AUSA Garret and Magistrate Judge Mann. Both individuals understandably do not recall what happened during the application process which occurred over a year ago. Agent Quaglia did not submit an affidavit.

It should be noted that contrary to defendant's argument, a district court can reconstruct what occurred in front of a magistrate during an application for a warrant by using testimony from the participants in the application process. *See United States v. Clyburn*, 24 F.3d 613 (4th Cir. 1994). Additionally, the Second Circuit has permitted a magistrate to testify about his thought process in order to rescue a possibly infirm warrant. *See United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993). Neither side has suggested that in this case a hearing would help resolve the issue.

-18-

unless the "good faith" exception developed in *United States v. Leon*, 468 U.S. 897 (1984), applies.[8/]

"In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court stated that the exclusionary rule did not apply to evidence seized in objectively reasonable reliance on a warrant subsequently declared invalid." *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992). The burden is on the prosecution to prove that the executing officers acted in good-faith reliance on the search warrant. *See id.* at 77.

Generally, if a law enforcement officer seizes material pursuant to a warrant issued by a magistrate, that officer is

---

[8/] If the photographs had been shown to the magistrate as the prosecution initially argued, the warrant application process would violate Rule 41(c)(1) of the Federal Rules of Criminal Procedure. The rule provides in part:

> A warrant other than a warrant upon oral testimony ... shall issue only on an affidavit or affidavits sworn to before the federal magistrate judge ... and establishing the grounds for issuing the warrant. ... Before ruling on a request for a warrant the federal magistrate judge ... may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.

Fed. R. Crim. Pro. 41(c)(1). The rule does not explicitly address the situation here where the prosecution alleges that the magistrate viewed physical evidence that was not attached to the affidavit or otherwise recorded. However, the purpose of this rule is to have an adequate record of the magistrate's probable cause determination so that, if asked, a district court can review that determination. *Accord People v. Taylor*, 543 N.Y.S.2d 357 (1989) (purpose of similar New York statute is "to provide the very basis for an appellate determination of probable cause for issuance of a search warrant"). Accordingly, if the photographs were shown to the magistrate but not attached to the affidavit, Rule 41(c)(1) was violated. However, the violation of Rule 41's recordation requirement would be considered a technical violation that did not result in any prejudice to defendant because the magistrate would presumably have issued the warrant even if the recordation procedures were followed. *Accord Melendez*, 1990 WL 109201, at *1-2 (suppression not warranted because while tape recording failed during warrant application process, the magistrate reconstructed missing portion two days later and would have issued warrant even if the tape recorder had not failed).

-19-

entitled to rely on the magistrate's determination that the warrant was properly issued. *See Leon*, 468 U.S. at 920. This is so because the exclusionary rule was developed to deter mistakes and improper conduct by law enforcement officers and not mistakes and improper conduct by magistrates. *See id*. at 915.

Suppression remains an available remedy, however, (1) if the issuing magistrate was knowingly misled by an affidavit; (2) if the issuing magistrate wholly abandoned his judicial role; (3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render a law enforcement officer's reliance on it unreasonable; or (4) if the warrant is so facially deficient that reliance upon it is unreasonable. *See id*. at 923. In these four scenarios, the law enforcement officer is not entitled to rely on the magistrate's determination that the warrant was valid. *See id*. at 922.

The prosecution argues that in this case there is nothing to indicate that the agents should not have relied on the search warrant issued by the magistrate. Defendant responds that the third exception to *Leon*'s good-faith analysis applies here because Agent Quaglia's affidavit was so lacking in probable cause so as to render the agents' reliance on it unreasonable.

"Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the 'standard of reasonableness ... is an objective one, ... [one that] requires officers to have a

-20-

reasonable knowledge of what the law prohibits.'" *George*, 975

F.2d at 77 (quoting *Leon*, 468 U.S. at 919-20). Suppression is

warranted if "'the law enforcement officer had knowledge, or may

properly be charged with knowledge, that the search was

unconstitutional under the Fourth Amendment.'" *Leon*, 468 U.S. at

919 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).

If a particular legal requirement is not reasonably in doubt, the

law enforcement officer cannot reasonably rely on a search

warrant that contravenes such a requirement. *See United States

v. Cancelmo*, 64 F.3d 804, 809 (2d Cir. 1995) (because issue

presented was "sufficiently difficult as to 'create disagreement

among thoughtful and competent judges,'" material was not

suppressed); *United States v. Ricciardelli*, 998 F.2d 8, 16 (2d

Cir. 1993) (because "law was settled that the conditions

governing the execution of anticipatory warrants must be

explicit, clear, and narrowly drawn," material must be

suppressed); *George*, 975 F.2d at 78 (because requirement of

particularity is settled law, material must be suppressed);

*United States v. Buck*, 813 F.2d 588, 593 (2d Cir. 1987) (because

court found similar warrants proper, suppression not warranted

even though the warrant was improper).

     This is so because "[g]ood faith is not a magic lamp

for police officers to rub whenever they find themselves in

trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.

Case 1:08-cr-00361-PAC    Document 23-8    Filed 07/01/2008    Page 20 of 23



-21-


1996). "[O]urs is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." *Malley v. Briggs*, 475 U.S. 335, 345-46 (1986).

Here, the warrant is infirm because Agent Quaglia's affidavit in support of the warrant made a conclusory statement that the photographs sent to defendant depicted children exhibiting their genitals and pubic areas in a lewd and lascivious manner and because the photographs themselves were not shown to the magistrate or attached to the affidavit.[9/] The affidavit did not provide sufficient detail about the photographs to permit the magistrate to determine independently whether the photographs were protected by the First Amendment or were in fact child pornography. Instead, the affiant simply evaluated the content of the photographs and made his own determination that the photographs were not of the sort protected by the First Amendment.

---

[9/] Defendant argues that this anticipatory warrant is infirm because the conditions to its execution were insufficient to establish probable cause to believe that child pornography would be found at defendant's apartment. Specifically, the warrant and accompanying affidavit did not require the two packages sent to defendant to be delivered to defendant prior to its execution. Defendant than argues that this defect is so clear that reliance on the warrant was unreasonable.

An examination of the affidavit demonstrates that defendant's description of the conditions precedent is incorrect. The warrant signed by the magistrate requires defendant to accept delivery of the packages from the building superintendent prior to the execution of the warrant.


p.21                                                                    May 27 08 02:58p

-22-

If this were a case involving material alleged to be obscene, an argument that *Leon*'s good-faith exception should apply would be frivolous. The requirement of a detailed affidavit is a cornerstone in First Amendment jurisprudence. No reasonably trained law enforcement officer could conclude that a warrant is valid if issued on the basis of an affidavit containing a conclusory statement that material is obscene.

No case has addressed the warrant requirements in the context of allegedly pornographic photographs of children engaging in lascivious exhibitions. However, certainly prior to 1982 when the Supreme Court decided *Ferber*, warrants for the seizure of child pornography had to be supported by a sufficiently detailed affidavit describing the alleged child pornography or by the magistrate's personal review of the material. *See Ferber*, 458 U.S. at 753. While *Ferber* redefined the limits of child pornography, nothing in *Ferber* undermines the reasoning behind procedures established to address First Amendment concerns such as having a magistrate, not a law enforcement officer, determine the boundary between protected and unprotected materials.

After *Ferber*, magistrate judges continued to review personally material alleged to be child pornography. *See, e.g.*, *United States v. Peden*, 891 F.2d 514 (5th Cir. 1989); *United States v. Maday*, 1989 WL 53027 (W.D.N.Y. May 16, 1989). Also

-23-

after *Ferber*, courts expressed concern over the sometimes difficult and always sensitive task of determining whether a particular depiction of a child contained a lascivious exhibition. *See, e.g., Villard*, 885 F.2d at 121. In *United States v. Smith*, the Ninth Circuit criticized a conclusory affidavit offered in support of a search warrant. After much discussion, the Ninth Circuit determined that suppression was not necessary because the affidavit indicated that the alleged child pornography depicted a "specific clearly defined" act proscribed by 18 U.S.C. §§ 2252, 2256(2), in that case sadistic and masochistic abuse. *See Smith*, 795 F.2d at 847-48, 848 n.6.

Precedent and common sense indicate that *Ferber* did not alter the First Amendment concerns and the attendant warrant requirements established to safeguard materials protected by First Amendment. Law enforcement officers cannot reasonably disregard well-established warrant requirements simply because the unprotected material is alleged to be lascivious rather than obscene.

Accordingly, I conclude that a reasonably well-trained law enforcement officer would have recognized that Agent Quaglia's conclusory affidavit failed to establish probable cause that the photographs sent to defendant were child pornography. Because an important and well-established warrant requirement was missing in this case, the agents who searched defendant's apartment could not have reasonably relied on the May 20, 1996

-24-

warrant.  Therefore, the requirements for *Leon's* good-faith

exception are not satisfied, and all materials seized during the

search of defendant's apartment in both the first and second

search (which was the fruit of the first) must be suppressed.

The Clerk is directed to mail a copy of the within to

all parties and to Magistrate Judge Mann.

SO ORDERED.

Dated :    Brooklyn, New York
           July 17 , 1997

_____
United States District Judge